UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN H. MARKS and M. GREGG BLOCHE, MD., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) | Civil Action No. 07-2050 (HHK) |
| ) | |
| DEPARTMENT OF DEFENSE, *et al.* ) ) | |
| Defendants. ) ) | |

PLAINTIFFS' RESPONSE TO COURT ORDER OF JANUARY 17, 2008

Plaintiffs hereby respond to this Court's Order of January 17, 2008, directing the

parties to confer and submit a proposed order setting forth proposed deadlines for the

submission of dispositive motions or, if unable to agree, to submit separate proposed

orders.  Counsel for the parties have conferred extensively in order to reach an agreement

on a scheduling order for this case.  These exchanges have been constructive and have

served to narrow considerably the gaps between the parties' positions.  But the parties

have been unable to reach an agreement on a joint proposed schedule, thus necessitating

the filing of separate proposals.

Plaintiffs propose the following timeline, and attach a proposed scheduling order,

reflecting the following milestones:

- Defendants shall complete searches for responsive records and shall disclose non-

  exempt records and segregable portions thereof by April 1, 2008;

- Defendants shall submit declarations describing their searches and the bases for any withholdings, in an index prepared in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), or something akin to it, by May 1, 2008;

- Defendants shall file dispositive motions, if any, by June 1, with any opposition papers to be filed by July 1, and any reply by July 15, 2008.

Plaintiffs recognize that this proposal may need to be adjusted if defendants identify large numbers of responsive records, or encounter other problems in the processing of plaintiffs' requests, but believe it is reasonable under the circumstances.

To understand why plaintiffs urge the Court to impose a tighter schedule than that urged by the defendants, it is useful to trace briefly the background of this litigation. Plaintiffs submitted their FOIA requests to nine agencies (eight components of the Department of the Defense, and the Central Intelligence Agency) in June 2006 and July 2006. The requests concerned the government's use of medical professionals to design and implement potentially abusive interrogation tactics.[1] Most of the defendants provided no substantive response, while a few of the agencies represented that their searches produced no responsive documents. On November 13, 2007, plaintiffs filed this action. The agencies' Answer, filed January 14, 2008, asserted that many of the defendant agencies had no responsive records, and that other agencies would not confirm

---

[1] Plaintiffs' first request, by letter dated June 20, 2006, sought records addressing healthcare professionals' roles in designing, implementing, and advising on interrogation, including making assessments as to whether interrogation should be interrupted, or providing medical treatment that allows it to continue. Plaintiffs' second request, by letter dated July 3, 2006, sought records of contracts between defense agencies and healthcare personnel or civilian contractors involved with interrogation. Plaintiffs' third request, by separate letter dated July 3, 2006, sought records concerning particular interrogation techniques that have raised heightened concern. Plaintiffs' fourth request, by letter dated July 10, 2006, sought records concerning research and protocols regarding individual responses to certain stress and duress tactics.

or deny the existence of responsive records. To date, no defendant has released a single document.

Since the filing of the government's Answer, the parties have conferred extensively on how the litigation should proceed. These exchanges have been constructive. Defendants, to their credit, have launched additional searches for responsive records: some records have been identified and are being reviewed, and defendants are engaged in ongoing efforts to identify additional responsive records and to process them in order to determine whether they may be disclosed to plaintiffs. All of these efforts are constructive and will facilitate the resolution of this litigation.

At the same time, however, 19 months have elapsed since plaintiffs filed their FOIA requests, and under the government's proposed time schedule, this case is unlikely to be ready for merits briefing until the end of 2008, assuming that all goes well. There are, however, already indications that procedural disputes between the parties might slow the progress of the litigation, and disputes could arise over the adequacy of the agencies' searches and the completeness of the agencies' *Vaughn* submissions.[2] Plaintiffs believe that tighter deadlines will speed the defendants' processing of their requests and facilitate the more expeditious resolution of this litigation.

Plaintiffs' proposed schedule also reflects the substantial public interest in the records at issue. Plaintiffs' requests seek records of the government's use of aggressive

---

[2] For instance, the Court may be called on to resolve a procedural issue that counsel have not yet been able to settle. Counsel for the government has informed plaintiffs' counsel that the CIA plans to argue that it did not receive plaintiff's second and third FOIA requests, and that the Air Force may contest receipt of plaintiff's third request, even though all of the requests were mailed simultaneously and every other agency received the requests. Plaintiffs have made efforts to resolve this issue without burdening the Court, but, depending on defendants' ultimate position, the parties may need to return to this issue in the future.

interrogation tactics designed and implemented by psychologists and other medical

professionals.  These requests were prompted by press and government reports

suggesting that government interrogators in Iraq and Guantánamo Bay, Cuba, have relied

on teams of mental health professionals to design interrogation tactics that increase stress

and exploit fears experienced by detainees, including water-boarding, sleep and light

deprivation, solitary confinement, exploitation of phobias, sexual humiliation, and mock

executions.[3]

The extent and propriety of these activities—and especially the participation of

mental health professionals in designing interrogation tactics—has been the subject of

widespread public and media interest, and the topic has been a focal point for

congressional inquiries, presidential campaigns, and questioning of judicial nominees.

*An Insider's Guide to the Upcoming Week*, Wash. Post, Sept. 3, 2007, at A2; Juliet

Eilperin & Michael D. Shear, *McCain, Romney Take Different Routes to Win Over*

*Michigan Voters*, Wash. Post, Jan. 15, 2008, at A5; Scott Shane, *Nominee Describes*

*Harsh Interrogation as Repugnant*, N.Y. Times, Oct. 31, 2007; *see also* Karen Dorn Steel

& Bill Morlin, *Senate Probe Focuses on Spokane Men*, Spokane Spokesman Rev., June

29, 2007.  Questions have also arisen over whether doctors involved in designing these

---

[3] *See, e.g.*, Mark Benjamin, *Inside the CIA's Notorious "Black Sites,"* Salon.com, Dec. 14, 2007, http://www.salon.com/news/feature/2007/12/14/bashmilah; Mark Benjamin, *The CIA's Torture Teachers*, Salon.com, June 21, 2007, at 1-2, http://www.salon.com/news/feature/2007/06/21/cia_sere/index.html?source=search&aim=/news/feature; Bob Egelko, *Psychologists Clash Over Aiding Military Interrogators*, San Fran. Chron., Aug. 18, 2007, at B2; Charles C. Krulak & Joseph P. Hoar, *It's Our Cage Too; Torture Betrays Us and Breeds New Enemies*, Wash. Post, May 17, 2007, at A17; Neil A. Lewis; *Interrogators Cite Doctors' Aid at Guantánamo*, N.Y. Times, June 24, 2005, at A1; Jane Mayer, *The Experiment*, The New Yorker, July 11, 2005, at 60, *available at* http://www.newyorker.com/printables/fact/050711fa_fact4; *The U.S. and Torture: Roots of Abu Ghraib in CIA Techniques,* Nat'l Catholic Rep., Nov. 5, 2004, at 2, http://ncronline.org/NCR_Online/archives2/2004d/110504/110504a.php.

interrogation methods have compromised their ethical obligations as medical professionals, by exploiting their expertise to the detriment of prisoners' physical and psychological health.[4] Indeed, the plaintiffs in this case, who are experts in bioethics, requested these records in part to further their own inquiry into these critical questions. *See, e.g.*, M. Gregg Bloche & Jonathan H. Marks, *Doing Unto Others as They Did Unto Us*, N.Y. Times, Nov. 14, 2005, at A21 (disseminating information regarding current military program and urging congressional action to curb abusive interrogations).

Possible abuse of detainees is necessarily "of significant public interest," and, as one court explained: "[T]he public should know of our government's treatment of individuals captured and held abroad." *ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 504-05 (S.D.N.Y. 2004). "The purpose of providing information to the public is 'to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed,'" and "[t]o achieve this goal," FOIA requires this to occur without unreasonable delay. *Electronic Privacy Info. Ctr. (EPIC) v. Dep't of Justice*, 416 F. Supp. 2d 30, 36 (D.D.C. 2006) (Kennedy, J.) (*quoting NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1976)). Where agencies have failed to respond in a timely fashion to FOIA requests, courts have ordered responses within time periods far shorter than that requested by plaintiffs in this case.[5]

---

[4] *See, e.g*, Emily Keram, *Will Medical Ethics Be a Casualty of the War on Terror?*, 34 J. Am. Acad. Psychiatry & L. 6 (2006), *available at* http://www.jaapl.org/cgi/content/ full/34/1/6; Mark Benjamin, *Psychologists Group Still Rocked by Torture Debate*, Salon.com, at 1, Aug. 4, 2006, http://www.salon.com/news/feature/2006/08/04/ apa/index.html; Peter Kramer, *Do No Harm: A Medical Ethicist Accuses Prison Doctors at Abu Ghraib and Guantánamo of Abetting Abuse*, Wash. Post, at BW04, July 23, 2006.

[5] *See, e.g.*, *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 76 (D.D.C. 2006) (ordering production of responsive documents and *Vaughn* index within 10 days); *EPIC*, 416 F. Supp. 2d at 43 (ordering production of responsive documents within 20 days and

Thus, the schedule plaintiffs seek is well within the bounds of those ordered in FOIA

cases involving records of public importance comparable to those at issue here.

## CONCLUSION

For the reasons stated above, plaintiffs respectfully submit that their Proposed

Scheduling Order provides a reasonable timeframe for the Court's handling of this

litigation, recognizing that modifications to the Order may be appropriate if good cause is

shown. Plaintiffs hereby request that this Court issue an Order adopting plaintiffs'

proposed schedule.

Respectfully submitted,

David C. Vladeck (DC Bar No. 945063)
Kathryn A. Sabbeth[6] (NY Bar No. 4265682)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Ave., NW
Washington, D.C. 20001
Phone: (202) 662-9535
Fax: (202) 662-9634
Email: vladeckd@law.georgetown.edu

Attorneys for Plaintiffs

Dated: February 8, 2008

---

*Vaughn* index within 30 days); *Judicial Watch v. Dep't of Energy*, 191 F. Supp. 2d 138,
140-41 (D.D.C. 2002) (ordering staggered production of *Vaughn* indexes and significant
numbers of documents in 20 to 60 days); *NRDC v. Dep't of Energy*, 191 F. Supp. 2d 41,
43-44 n.5 (D.D.C. 2002) (ordering production of "vast majority" of 7500 pages within 32
days, and *Vaughn* index one month later); *Aguilera v. FBI*, 941 F. Supp. 144, 153
(D.D.C. 1996) (ordering production of documents and *Vaughn* index within 29 days);
*ACLU*, 339 F. Supp. 2d at 505 (ordering production of documents and *Vaughn* index
within 30 days).

[6] Admitted to the Bar of the District of Columbia on February 4, 2008, and member of
the Bar of the State of New York. Awaiting admission to the Bar of the United States
District Court for the District of Columbia.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN H. MARKS and M. GREGG )
BLOCHE, MD., )
 )
          Plaintiffs, )
 )
            v. )     Civil Action No. 07-2050 (HHK)
 )
DEPARTMENT OF DEFENSE, *et al.*, )
 )
          Defendants. )
_____ )

**SCHEDULING ORDER**

Upon consideration of the parties' responses to this Court's Order of January 17, 2008, and the entire record herein, it is this ___ day of _____, 2008, hereby

ORDERED that defendants shall complete their searches to identify records responsive to the plaintiffs' requests for records under the Freedom of Information Act (FOIA) and shall provide plaintiffs with all non-exempt records, and segregable portions thereof, on or before April 1, 2008; and it is further

ORDERED that defendants shall provide plaintiffs with declarations describing the searches defendants undertook to identify responsive records, as well as indexes prepared in conformity with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), describing any responsive record, or segregable portion thereof, withheld by defendants, identifying the FOIA exemption or exemptions defendants claim justifies the withholding, and providing a detailed explanation of why each claimed exemption authorizes the withholding, on or before May 1, 2008; and it is further

ORDERED that defendants shall file a dispositive motion on or before June 1, 2008. Plaintiffs shall file opposition papers on or before July 1, 2008, and defendants shall file any reply by July 15, 2008.

_____
UNITED STATES DISTRICT JUDGE