UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGG BLOCHE, M.D., *et al.*,      )
                                  )
              Plaintiffs,          )
                                  )
       v.                          )          Civil Action No. 07-2050 (HHK)
                                  )
DEPARTMENT OF DEFENSE, *et al.*,   )
                                  )
              Defendants.          )

**PLAINTIFFS' MOTION FOR AN ORDER COMPELLING
DEFENDANT CENTRAL INTELLIGENCE AGENCY TO PROCESS
TWO OF PLAINTIFFS' FOIA REQUESTS**

Plaintiffs hereby move this Court for an order compelling defendant Central

Intelligence Agency to respond to plaintiffs' requests under the Freedom of Information

Act (FOIA) submitted to the Agency by letters dated July 3, 2006.  Although defendant's

counsel had informed plaintiffs that the Agency claimed that it did not receive the

requests, defendant waited until last week to formally assert that the Agency would not

process the requests.  The Agency takes this position even though it is undisputed that the

Agency had notice and copies of the requests when, or shortly after, this case was filed

on November 11, 2007.  The Agency's position, if accepted, would require plaintiffs to

refile FOIA requests initially filed two years ago and be put back in the long queue of

FOIA requesters awaiting action by the Agency.   For the reasons set forth in the

accompanying memorandum, plaintiffs' submit that the Agency's claims comes too little

too late, and the Court should order the Agency to search for records responsive to the

requests and to disclose all non-exempt material forthwith.

Respectfully submitted,

_____/s/_____
Kathryn A. Sabbeth (D.C. Bar No. 979101)
David C. Vladeck (DC Bar No. 945063)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Ave., NW
Washington, D.C. 20001
Phone: (202) 662-9535
Fax: (202) 662-9634
Email: KS455@law.georgetown.edu

Attorneys for Plaintiffs

Dated: August 12, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGG BLOCHE, M.D., *et al.*,           )
                                        )
                    Plaintiffs,         )
                                        )
            v.                          )        Civil Action No. 07-2050 (HHK)
                                        )
DEPARTMENT OF DEFENSE, *et al.*,        )
                                        )
                    Defendants.         )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR AN ORDER COMPELLING
DEFENDANT CENTRAL INTELLIGENCE AGENCY TO PROCESS
TWO OF PLAINTIFFS' FOIA REQUESTS**

Plaintiffs move this Court for an order compelling defendant Central Intelligence Agency (CIA) to respond to plaintiffs' requests under the Freedom of Information Act (FOIA) submitted to the Agency by letters dated July 3, 2006.  (*See* Exhibits A & B).  These letters were mailed through the United States Postal Service.  The CIA now claims it did not receive the two letters, although it did not deny that it received them, nor assert its failure to receive them as an affirmative defense, in defendants' Answer.  It now asserts, some two years after the fact, and months after its Answer was filed, that because it claims it did not receive the two July 3, 2006, letters, it "has no obligation to process those requests."  Letter from Susan K. Ullman, Senior Counsel, Department of Justice, to Kathryn A. Sabbeth, Esq., Counsel for Plaintiffs, dated Aug. 7, 2008 (submitted as Exhibit C).  This position makes particularly little sense given that plaintiffs' counsel submitted copies of these requests to the CIA through defendants' counsel in January 2008.

As plaintiffs' show below, the CIA's technical defense here should be rejected out of hand.  Application of the ordinary presumption that first-class mail carried by the U.S. Postal

Service is delivered in a timely fashion, coupled with the fact that seven other agencies received the letters, would provide ample grounds for the Court to conclude that the CIA had actual notice of these requests in July 2006. But plaintiffs do not ask the Court to so find. Instead, because there is no dispute that the CIA had actual notice of these requests no later than November 2007 when plaintiffs' filed this action, because the CIA did not begin processing *any* of plaintiffs' requests (including the two the agency concedes it did receive), until after this Court entered its Order of January 17, 2008, and because plaintiffs' counsel provided copies of all of plaintiffs' requests to defendants through defendants' counsel on January 22, 2008, the CIA should be charged with notice of the request letters, and should be compelled to process and respond to those requests forthwith. The CIA can claim no prejudice from that ruling; on the other hand, acceptance of the CIA's defense would be demonstrably unfair to the plaintiffs, as it would force them to go through the empty formality of resubmitting the request and then waiting a year or more before the CIA responds. Moreover, as plaintiffs also explain below, the CIA has waived this defense by not asserting it in its answer. To understand why plaintiffs' motion should be granted, it is necessary to sketch briefly the background of this litigation. We then explain why the CIA's position is unfounded as a matter of law.

*Background*

This case arises from a series of four FOIA requests the plaintiffs submitted to the CIA, the Office of the Director of National Intelligence, the Department of Defense and six agencies within the Department of Defense.[1] These four FOIA requests were all submitted by letter to

---

[1] The agencies within the Department of Defense are the Counterintelligence Field Activity, the Defense Advance Research Projects Agency, the Defense Intelligence Agency, the Department of the Army, the Department of the Navy, and the United States Air Force.

each of the nine agencies during June and July 2006; one request was submitted by letter dated June 20, 2006 (the "first" request); two requests were submitted by separate letters dated July 3, 2006 (the "second" and "third" requests); and the final request was submitted by letter dated July 10, 2006 (the "fourth" request). Each letter was sent to each of the individual defendants. *See* Plaintiffs' Complaint, at ¶¶10-13.

Each of the requests relates directly to work conducted by the plaintiffs, who are bioethics experts seeking to better understand the role that doctors and other health care professionals are playing in the interrogation of military prisoners and others detained by the United States government on the basis of alleged terrorist activities. Plaintiffs' first request (June 20, 2006) sought records addressing healthcare professionals' roles in designing, implementing, and advising on interrogation, including making assessments as to whether interrogation should be interrupted, or providing medical treatment that allows it to continue. Plaintiffs' second request (July 3, 2006) sought records of contracts between defense agencies and healthcare personnel or civilian contractors involved with interrogation. Plaintiffs' third request (also July 3, 2006) sought records concerning particular interrogation techniques that have raised heightened concern. Plaintiffs' fourth request (July 10, 2006) sought records concerning research and protocols regarding individual responses to certain stress and duress tactics.

As is recounted fully in the Complaint, at ¶¶14-31, plaintiffs received nothing in response to their requests. Many agencies did not respond at all; those that did denied they had any responsive records. Having waited for well over a year, and having no other option, plaintiffs filed this action on November 11, 2007, some sixteen months after filing their FOIA

3

requests.  Defendants' filed their answer on January 14, 2008.  That Answer did acknowledge, as to both of the July 3, 2006 request letters, that plaintiffs submitted the requests to "some defendants."  But the Answer went on to deny plaintiffs submitted the requests to "all defendants."  *See* Defendants' Answer at ¶¶ 11-12.   With respect to the CIA, plaintiffs' Complaint alleged in paragraph 29, "To date, the CIA has not issued a determination, nor has it released any records in response to Plaintiffs' Second or Third Request," that is, the two July 3, 2006 requests.  The defendants' Answer responds to this allegation in paragraph 29 as follows: "Defendant CIA admits the allegations in this paragraph."   The CIA's admission nowhere denies receipt of the letters; the agency's response presupposes that it received them but did not make a determination or a response.   In contrast, with respect to the Air Force, the Answer plainly asserts that the agency did not receive both July 3, 2006 requests; the Answer in paragraph 26 "den[ies] the premise that the United States Air Force received both of the referenced FOIA requests."  This is the only passage in the Answer identifying an agency claiming it did not receive any one of plaintiffs' request letters.

In discussions with defendants' counsel, plaintiffs's counsel were informed that the Air Force claimed that it did not receive one of the two July 3 requests (plaintiffs' third request) *and* that the CIA claimed that it not receive either of the two July 3 requests, notwithstanding its failure to so assert in the Answer.  Counsel for defendants acknowledged that every other agency received all requests.  And as the attached declaration of David C. Vladeck attests, he oversaw the preparation and mailing of the July 3, 2006, requests letters and copies of each letter were mailed to each of the defendant agencies.  Moreover, even after the Answer in this case was filed, virtually no work had been done to process plaintiffs' FOIA requests.  Defendants

4

conceded as much in their response to the Court's January 17, 2008 Order. *See* Defendants'

Response to Court Order of January 17, 2008, at 1 & 2 (Dkt. No. 6, filed Feb. 8, 2008). For that

reason, plaintiffs' counsel made clear that, because neither the Air Force nor the CIA had yet to

undertake any work to respond to plaintiffs' FOIA requests, and because both had actual notice

of those requests by November 2007 at the latest, they could not be prejudiced by having failed

to receive plaintiffs' requests earlier. And, as noted, counsel for defendants was provided copies

of all of the FOIA requests on January 22, 2008, including those directed to the CIA. For that

reason, plaintiffs' counsel urged that the two agencies should proceed to process those requests.

The Air Force did just that. It has processed records in response to plaintiffs' third request, as

has every other agency. Accordingly, this motion addresses only the CIA's refusal to process

plaintiffs' July 3, 2006 requests.[2]

## ARGUMENT

### I. Under the Circumstances of this Case, the CIA "Received" Plaintiffs' July 3, 2006 Requests No Later than November 2007

The CIA's argument in this case should be rejected even if the Court were inclined to

find that the CIA did not receive plaintiffs' July 3, 2006 requests letters in July 2006. Of course,

in an ordinary case, involving non-governmental parties, there would be no question that the CIA

had constructive notice of the July 2006 FOIA requests shortly after they were mailed on July 3,

2006. Under the "mailbox rule," so long as it is established that letters were properly delivered

---

[2] It is also worth noting that plaintiffs' flagged this issue in Plaintiffs' Response to Court Order of January 17, 2008. (Dkt. No. 5, filed Feb. 8, 2008). Plaintiffs pointed out that the "Court may be called on to resolve a procedural issue that counsel have not yet ben able to settle," and noted that the CIA claimed it had not received the two July 3 requests and the Air Force claimed that it had not received plaintiffs' third request. (*Id*. at 3 n.2).

to the United States Postal Service, the settled presumption is that the letters were delivered in the ordinary course, within three working days of their mailing. *See generally Houston v. Lack,* 487 U.S. 266 (1988). Indeed, the presumption of regularity that attaches to first-class mail is so deeply ingrained that both the Federal Rules of Civil and Criminal Procedure depend on mail service and find mail service presumptively adequate. *See, e.g.*, Fed. R. Civ. P. Rule 6(e) ; Fed. R. App. P. Rule 4(c). Here, the evidence that the letters were properly mailed is overwhelming — seven of the agencies concede that they received the two July 3, 2006 request letters, the Air Force acknowledges that it received one of the two letters, and counsel has provided a declaration attesting to the fact that he personally supervised the mailing of the letters.

Moreover, it would be problematic for courts automatically to credit agency claims that the agency did not receive a FOIA request; especially where there is evidence that the letters were properly entrusted to the Postal Service, and where the FOIA request is one the agency might not want to answer. Indeed, Congress recently amended FOIA to require agencies to do a better job in tracking FOIA requests and keeping requesters informed of the agency's progress in processing their requests. *See* OPEN Government Act of 2007, 110 Pub. L. 175, § 7, 121 Stat. 2527, to take effect on December 31, 2008.

But plaintiffs see no need for the Court to address that question. To the contrary, the CIA is simply wrong to suggest that plaintiffs' FOIA rights are triggered only by its "receipt" of the a FOIA request. That is not what FOIA says. The operative section of FOIA, 5 U.S.C. § 552(a)(3)(A) provides that "each agency, *upon any request for records* which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any

person." (Emphasis added).   Thus, under FOIA, the key is "any request for records," and it is

undisputed that the CIA was on notice that plaintiffs submitted their July 3, 2006 "request[s] for

records" by November 2007, when the complaint was filed.  To be sure, FOIA then provides that

"upon any request for records" an agency must make certain determinations "within 20 days

(excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request."

5 U.S.C. § 552(a)(6)(A)(I), (ii).  But those provisions underscore plaintiffs' point: Actual notice

of the requests occurred no later than November 2007, when the complaint was filed, and the

CIA's obligation to search for and process responsive records was triggered at that point, if not

earlier.[3]

　　　　There is an intensely practical reason for the Court to read FOIA in this manner.  Like

most agencies, the CIA has a substantial backlog in processing FOIA requests.

*See* http://www.foia.cia.gov/backlog.asp  (showing CIA's statistics regarding its backlog).

Were plaintiffs required to refile their July 3, 2006 FOIA requests with the CIA now, or even had

they done so at the end of 2007, they would have been returned to the back of the long queue of

waiting requesters at the CIA.  As a result, a FOIA request filed in 2006 would not likely receive

the agency's attention until some time in 2009, if not later.   This delay would not just prejudice

plaintiffs, it would also likely result  in piecemeal litigation for the set of related FOIA requests,

---

[3]  Plaintiffs' counsel also re-submitted the July 3, 2006 FOIA requests by e-mail dated
January 22, 2008.  On that date, plaintiffs' counsel provided defendants' counsel with copies of
all four FOIA request letters to each of the nine defendants.  There is no conceivable basis for
the CIA's assertion that it "has no obligation to process those requests."  On the contrary, at the
very latest, the CIA was obligated to make determinations with regard to those requests within
20 days of the January re-submission.  *See* 5 U.S.C. § 552(a)(6)(A)(I), (ii).

a result that would serve no one's interests.  For these reasons, the CIA should be ordered to process plaintiffs' July 3, 2006 FOIA requests forthwith.

. **II. The CIA Has Waived This Defense.**

Putting aside the notice question, the CIA's objection to processing comes too little too late, because the Agency waived this defense by not raising it in its Answer.  The CIA waived the defense under Rule 8 by not specifically denying that it received the July 3, 2006 requests, and it independently waived the defense under Rule 8 and Rule 12 by not asserting it as an affirmative defense.

Under Rule 8, a party must specifically deny those portions of a complaint that it does not intend to admit.  The CIA did not do that in its Answer.  By failing to deny that it received the July 3, 2006 letters, the CIA failed to comply with Rule 8(b)(3), which provides that "party that does not intend to deny all the allegations [in a complaint] must either specifically deny designated allegations or generally deny those all except those specifically admitted."  The CIA also failed to comply with Rule 8(b)(4), which says that "[a] party that intends in good faith to deny only part of an allegation must admit that part that is true and deny the rest."  Nothing in the Answer provides a specific denial that responds to paragraphs 11 and 12 in the Complaint.  The only response offered was the general acknowledgment, not at all specific to the CIA, that plaintiffs submitted the July 3 requests to "some defendant," but not to "all defendants."  *See* Defendants' Answer at ¶¶ 11-12.  But that response is hardly a general denial or a general admission under Rule 8(b)(3), and a qualified statement that "some defendants" did not receive the letters is plainly insufficient to meet the CIA's pleading burden under Rule 8.  The point of Rule 8 is to require specificity, not guesswork.  As Rule 8(b)(4) drives home, "[a] party that

8

intends in good faith to deny only part of an allegation," in this case, the allegation that the

letters were sent to all agencies, "must admit the part that is true and deny the rest." Had

defendants complied with that Rule, and the remainder of Rule 8, it would have specified which

agencies claimed not to have received the July 3, 2006 letters. Indeed, the specific denial by the

Air Force that it did not receive one of the two July 3, 2006 letters demonstrates what Rule 8

requires, but the CIA did not do here — that is, to specifically deny receipt. *See generally*

*Giardino v. District of Columbia*, 505 F. Supp. 2d 117, 121 (D.D.C. 2007) (per Magistrate Judge

Facciola) (addressing and rejecting a similar non-receipt defense when absent from answer).

Compounding the deficiencies in defendants' Answer, the CIA also failed to comply with

the independent requirements of Rule 8 and Rule 12 mandating that a defendant "must

affirmatively state any avoidance or affirmative defense" in its answer (or by prior motion) on

pain of waiver. Fed. R. Civ. P. Rule 8(c)(1); *see* Rule 12(b). Circuit law is in accord.

"Affirmative defenses must be raised in a responsive pleading, not a dispositive motion." *Harris*

*v. United States Dep't of Justice*, 126 F.3d 339, 341 (D.C. Cir. 1997). "A party's failure to plead

an affirmative defense . . . generally results in the waiver of that defense and its exclusion from

the case." *Id*. at 343 (quoting *Dole v. Williams Enterprises, Inc*., 876 F.2d 186, 189 (D.C. Cir.

1989) (emphasis in original) (internal citation omitted)).

The defense that the agency was not properly served with plaintiffs' FOIA requests is

plainly an "affirmative defense" under the Rules because it carries with it a claim for relief —

that is, the dismissal of plaintiffs' claim for relief regarding the July 3, 2006 letters. *See* Rule

12(b) (requiring affirmative defenses to appear in Answer, or, in some cases, motions made

before a responsive pleading is filed).

No such affirmative defense is raised in the Answer.  Indeed, the *only* affirmative defense raised in the Answer is that the Court "lacks jurisdiction over all or some of this action." Answer at 8.  Defendants filed no motion to dismiss before submitting its Answer and hence has waived whatever affirmative defenses it might have asserted, apart from the non-waivable defense of lack of subject-matter jurisdiction.  But whatever else a defense based on an agency's claimed lack of receipt of a request might be, it is surely not one of subject-matter jurisdiction. FOIA confers subject-matter jurisdiction on this Court over actions "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  The question whether plaintiffs submitted a FOIA request and whether it was received by the agency are factual questions that go to the merits, not to the Court's subject-matter jurisdiction.  *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).  Accordingly, by failing to deny specifically that it received the July 2, 2006 letters, and by failing to plead the lack of receipt as an affirmative defense, the CIA has waived this objection, and the Court should direct the agency to process plaintiffs' July 3, 2006, FOIA requests.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to compel the CIA to search for, process, and disclose records responsive to plaintiffs July 3, 2006 FOIA requests should be granted.

Respectfully submitted,

____/s/_____
Kathryn A. Sabbeth (D.C. Bar No.  979101)
David C. Vladeck (DC Bar No. 945063)
Institute for Public Representation
Georgetown University Law Center

10

600 New Jersey Ave., NW
Washington, D.C. 20001
Phone: (202) 662-9535
Fax: (202) 662-9634
Email: KS455@law.georgetown.edu

Attorneys for Plaintiffs

Dated: August 12, 2008



*Georgetown University Law Center*
## INSTITUTE FOR PUBLIC REPRESENTATION

Hope M. Babcock
Angela J. Campbell
David C. Vladeck
    Directors
Marvin Ammori+*
Jillian M. Cutler
Emma E. Garrison
Jennifer L. Prime+**
Emily Read
Kristi M. Smith
    Staff Attorneys

600 New Jersey Avenue, NW, Suite 312
Washington, DC 20001-2075
Telephone: 202-662-9535
TDD: 202-662-9538
Fax: 202-662-9634

VIA FIRST CLASS MAIL

July 3, 2006

Central Intelligence Agency
Scott A. Koch
Information and Privacy Coordinator
Washington, D.C. 20505

Re:    **Freedom of Information Act Request.**

Dear Mr. Koch:

This letter constitutes a request pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA) on behalf of our clients, Professors M. Gregg Bloche, M.D., and Jonathan H. Marks. Professors Bloche and Marks are internationally acclaimed scholars who have published leading academic works on the ethics of the participation of doctors and other medical personnel in interrogation and torture. We are also filing this request with the Department of Defense, Department of the Army, Department of the Navy, Department of the Air Force, Defense Intelligence Agency, Defense Security Service, the Office of the Director of National Intelligence, Defense Advanced Research Projects Agency, and the Counterintelligence Field Activity. We ask that you forward this request to each appropriate office, agency, field office, major command, surgeon general, unit or facility within the Central Intelligence Agency. We ask that you also forward this request to the appropriate official(s) at the John F. Kennedy Special Warfare Center and School at Fort Bragg, North Carolina, or any other special warfare training programs that employ psychiatrists or psychologists. The submission of this request should prevent the destruction of any responsive records.

We would ask that a response to this request be made within twenty (20) business days of receipt of this letter, as required by § 552(a)(6)(A)(i). If you cannot respond within twenty (20) business days, please contact us so that we can develop a mutually agreeable timeframe for your response. In addition, because of the volume of records requested, we ask that responsive records be made available to us on an ongoing basis, and that the release of records not be delayed because of

agency concerns about possible exemption claims for other records.

## Records Requested

Pursuant to the FOIA, we hereby request that you make available for inspection and copying the following records that contain information regarding interrogation methods and practices used by any military or intelligence agency of the United States that are in the possession or control of the Central Intelligence Agency. The records subject to this request are all records that were in force, use or existence on September 11, 2001, or that have been put in place or used, either formally or informally, since that date, or that have been created since that date.

Specifically, we request all records:

1. Setting forth or discussing contracts between the Central Intelligence Agency and health care personnel, including physicians; psychologists; psychiatrists; nurses; medical corpsmen; or other health care personnel or their assistants who are attached to Behavioral Science Consultation Teams (BSCTs), or who design, monitor or implement interrogation, or who advise or consult in any manner regarding interrogation.

2. Setting forth or discussing contracts between the Central Intelligence Agency and civilian contractors, including physicians; psychologists; psychiatrists; nurses; medical corpsmen; or other health care personnel or their assistants, and all others with training or other background in psychology, psychiatry, learning theory or the behavioral sciences, who assist with the design, monitoring or implementation of interrogation, or who advise or consult in any manner regarding interrogation.

If any exemption is claimed for any these requested records, we ask that you produce all reasonably segregable non-exempt portions of the records, as is required by 5 U.S.C. § 552(b), and that you describe each withheld record (or portion thereof) to better enable us and a reviewing court to determine the propriety of your withholding decisions.

## Request for Fee Waiver

Pursuant to § 552(a)(4)(A)(ii)(II), we also request that you waive search and copying expenses for this request because we are affiliated with an educational institution, and this request is made for a scholarly purpose that benefits the public interest.  We have no commercial interest in the requested records.

Dr. Bloche is a Professor of Law at Georgetown University, Adjunct Professor at Johns Hopkins University's Bloomberg School of Public Health, a Visiting Fellow at The Brookings Institution, and a Visiting Fellow with the Harvard University Program on Ethics and Health. Dr. Bloche is a leading scholar on U.S. and international health law and policy. His recent work has appeared in numerous academic and professional publications, including the *California* and *Stanford Law Reviews, New England Journal of Medicine, Journal of the American Medical Association,*

*Health Affairs, the New York Times, Washington Post, Los Angeles Times,* and on National Public Radio's Morning Edition.

Professor Marks is a barrister at Matrix Chambers, London, and is currently Greenwall Fellow in Bioethics at Georgetown University Law Center and Johns Hopkins School of Public Health. Beginning in August 2006, Marks will join the faculty of Pennsylvania State University as Associate Professor of Bioethics, Humanities and Law, and as Research Fellow at the Pennsylvania State University Rock Ethics Institute. Professor Marks teaches and writes on international law, with a focus on terrorism and war. He has taught and lectured in Europe and in the United States, including at the Woodrow Wilson School of Public and International Affairs at Princeton University, and at the University of North Carolina Chapel Hill Law School. Professor Marks' recent article on medical ethics in interrogation, "The Silence of the Doctors" appeared in *The Nation,* December 26, 2005. His article entitled "Doctors of Interrogation" appeared in the leading bioethics journal, *The Hastings Center Report,* in July 2005.

Together, Professors Bloche and Marks have written extensively on the role of medical personnel in interrogation, including their recent article, "Doctors and Interrogators at Guantanamo Bay," 353 *New Eng. J. Med.* 6 (2005). This FOIA request is made for the purpose of conducting continuing research on interrogation methods and practices, and publishing academic articles. Professors Bloche and Marks intend to widely disseminate their findings and ensure that they are published not just in academic publications, but also in mainstream publications that reach a wider audience. If for some reason you determine that a full fee waiver is not warranted, please contact us at (202) 662-9535 before proceeding with this request.

We look forward to your reply. If you have any questions about this request, please contact us as promptly as possible. Thank you for your cooperation.

Sincerely,

Emily B. Read

David C. Vladeck



GEORGETOWN UNIVERSITY LAW CENTER
## INSTITUTE FOR PUBLIC REPRESENTATION

Hope M. Babcock
Angela J. Campbell
David C. Vladeck
   Directors
Marvin Ammori+*
Jillian M. Cutler
Emma E. Garrison
Jennifer L. Prime+**
Emily Read
Kristi M. Smith
   Staff Attorneys

600 New Jersey Avenue, NW, Suite 312
Washington, DC 20001-2075
Telephone: 202-662-9535
TDD: 202-662-9538
Fax: 202-662-9634

VIA FIRST CLASS MAIL

July 3, 2006

Central Intelligence Agency
Scott A. Koch
Information and Privacy Coordinator
Washington, D.C. 20505

Re:     **Freedom of Information Act Request.**

Dear Mr. Koch:

This letter constitutes a request pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA) on behalf of our clients, Professors M. Gregg Bloche, M.D., and Jonathan H. Marks. Professors Bloche and Marks are internationally acclaimed scholars who have published leading academic works on the ethics of the participation of doctors and other medical personnel in interrogation and torture. We are also filing this request with the Department of Defense, Department of the Army, Department of the Navy, Department of the Air Force, Defense Intelligence Agency, Defense Security Service, the Office of the Director of National Intelligence, Defense Advanced Research Projects Agency, and the Counterintelligence Field Activity. We ask that you forward this request to each appropriate office, agency, field office, major command, surgeon general, unit or facility within the Central Intelligence Agency. We ask that you also forward this request to the appropriate official(s) at the John F. Kennedy Special Warfare Center and School at Fort Bragg, North Carolina, or any other special warfare training programs that employ psychiatrists or psychologists. The submission of this request should prevent the destruction of any responsive records.

We would ask that a response to this request be made within twenty (20) business days of receipt of this letter, as required by § 552(a)(6)(A)(i). If you cannot respond within twenty (20) business days, please contact us so that we can develop a mutually agreeable timeframe for your response. In addition, because of the volume of records requested, we ask that responsive records be made

available to us on an ongoing basis, and that the release of records not be delayed because of agency concerns about possible exemption claims for other records.

## Records Requested

Pursuant to the FOIA, we hereby request that you make available for inspection and copying the following records that contain information regarding interrogation methods and practices used by any military or intelligence agency of the United States that are in the possession or control of the Central Intelligence Agency. The records subject to this request are all records that were in force, use or existence on September 11, 2001, or that have been put in place or used, either formally or informally, since that date, or that have been created since that date.

Specifically, we request all records:

1. Setting forth or discussing the legality or ethics of the following interrogation techniques:

   a. "stress and duress" tactics, including sleep deprivation and manipulation, detainee disorientation and exposure to temperature extremes, or any other approaches to interrogation employed by or derived from the Survival Evasion Resistance and Escape (SERE) program taught at the John F. Kennedy Special Warfare Center and School at Fort Bragg, North Carolina, or any similar program administered by the Department of Defense, the Central Intelligence Agency, or any contractor employed by these agencies;

   b. the use of functional magnetic resonance imaging (fMRI), electroencephalography (EEG), infrared spectroscopy, other brain scanning or measurement technologies, or polygraphs to detect deception, guilty knowledge, or accurate recollections, or to otherwise assist in or support interrogation, or to identify individuals for follow-up questioning;

   c. the use of pharmacological agents to assist in, support or facilitate interrogation; or

   d. the technique known as the Reid Technique.

2. Setting forth or discussing the efficacy of the use of the following interrogation techniques:

   a. "stress and duress" tactics, including sleep deprivation and manipulation, detainee disorientation and exposure to temperature extremes, or any other approaches to interrogation employed by or derived from the SERE program or any similar program administered by the Department of Defense, the Central Intelligence Agency, or any contractor employed by these agencies;

    b.  the use of fMRI, EEG, infrared spectroscopy, other brain scanning or measurement technologies, or polygraphs to detect deception, guilty knowledge, or accurate recollections, or to otherwise assist in or support interrogation, or to identify individuals for follow-up questioning;

    c.  the use of pharmacological agents to assist in, support or facilitate interrogation; or

    d.  the technique known as the Reid Technique.

3.  Setting forth or discussing the scientific or other reasons for believing or suspecting that the following interrogation strategies will be effective:

    a.  "stress and duress" tactics, including sleep deprivation and manipulation, detainee disorientation and exposure to temperature extremes, or any other approaches to interrogation employed by or derived from the SERE program or any similar program administered by the Department of Defense, the Central Intelligence Agency, or any contractor employed by these agencies;

    b.  the use of fMRI, EEG, infrared spectroscopy, other brain scanning or measurement technologies, or polygraphs to detect deception, guilty knowledge, or accurate recollections, or to otherwise assist in or support interrogation, or to identify individuals for follow-up questioning;

    c.  the use of pharmacological agents to assist in, support or facilitate interrogation; or

    d.  the technique known as the Reid Technique.

4.  Setting forth or discussing the use of foreign nationals to assist United States personnel in using any of the following interrogation techniques, or the training of foreign nationals to assist United States personnel in the use of any of the following techniques:

    a.  "stress and duress" tactics, including sleep deprivation and manipulation, detainee disorientation and exposure to temperature extremes, or any other approaches to interrogation employed by or derived from the SERE program or any similar program administered by the Department of Defense, the Central Intelligence Agency, or any contractor employed by these agencies;

    b.  the use of fMRI, EEG, infrared spectroscopy, other brain scanning or measurement technologies, or polygraphs to detect deception, guilty knowledge, or accurate recollections, or to otherwise assist in or support interrogation, or to identify individuals for follow-up questioning;

   c.  the use of pharmacological agents to assist in, support or facilitate interrogation; or

   d.  the technique known as the Reid Technique.

If any exemption is claimed for any these requested records, we ask that you produce all reasonably segregable non-exempt portions of the records, as is required by 5 U.S.C. § 552(b), and that you describe each withheld record (or portion thereof) to better enable us and a reviewing court to determine the propriety of your withholding decisions.

## Request for Fee Waiver

Pursuant to § 552(a)(4)(A)(ii)(II), we also request that you waive search and copying expenses for this request because we are affiliated with an educational institution, and this request is made for a scholarly purpose that benefits the public interest. We have no commercial interest in the requested records.

Dr. Bloche is a Professor of Law at Georgetown University, Adjunct Professor at Johns Hopkins University's Bloomberg School of Public Health, a Visiting Fellow at The Brookings Institution, and a Visiting Fellow with the Harvard University Program on Ethics and Health. Dr. Bloche is a leading scholar on U.S. and international health law and policy. His recent work has appeared in numerous academic and professional publications, including the *California* and *Stanford Law Reviews, New England Journal of Medicine, Journal of the American Medical Association, Health Affairs, the New York Times, Washington Post, Los Angeles Times,* and on National Public Radio's Morning Edition.

Professor Marks is a barrister at Matrix Chambers, London, and is currently Greenwall Fellow in Bioethics at Georgetown University Law Center and Johns Hopkins School of Public Health. Beginning in August 2006, Marks will join the faculty of Pennsylvania State University as Associate Professor of Bioethics, Humanities and Law, and as Research Fellow at the Pennsylvania State University Rock Ethics Institute. Professor Marks teaches and writes on international law, with a focus on terrorism and war. He has taught and lectured in Europe and in the United States, including at the Woodrow Wilson School of Public and International Affairs at Princeton University, and at the University of North Carolina Chapel Hill Law School. Professor Marks' recent article on medical ethics in interrogation, "The Silence of the Doctors" appeared in *The Nation,* December 26, 2005. His article entitled "Doctors of Interrogation" appeared in the leading bioethics journal, *The Hastings Center Report,* in July 2005.

Together, Professors Bloche and Marks have written extensively on the role of medical personnel in interrogation, including their recent article, "Doctors and Interrogators at Guantanamo Bay," 353 *New Eng. J. Med.* 6 (2005). This FOIA request is made for the purpose of conducting continuing research on interrogation methods and practices, and publishing academic articles. Professors Bloche and Marks intend to widely disseminate their findings and ensure that they are published not just in academic publications, but also in mainstream

publications that reach a wider audience.  If for some reason you determine that a full fee waiver is not warranted, please contact us at (202) 662-9535 before proceeding with this request.

We look forward to your reply.  If you have any questions about this request, please contact us as promptly as possible. Thank you for your cooperation.

Sincerely,

Emily B. Read

David C. Vladeck



**U.S. Department of Justice**

Civil Division, Federal Programs Branch

| Via First-Class Mail | Via Overnight Delivery |
|---|---|
| P.O. Box 883, Rm. 7146 | 20 Massachusetts Ave.,NW |
| Washington, D.C. 20044 | Room 7146 |
| | Washington, D.C. 20530 |

Susan K. Ullman                                           Tel: (202) 616-0680
Senior Counsel                                            Fax: (202) 616-8474

August 7, 2008

**VIA U.S. MAIL AND ELECTRONIC MAIL**
Kathryn A. Sabbeth
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Ave., NW, Suite 312
Washington, D.C. 20001

      Re:    *Bloche v. Department of Defense, et al, 07-CV-2050 (HHK) (D.D.C.)*

Dear Ms. Sabbeth,

      As you requested, I am sending this letter to put in writing the Central Intelligence Agency's (CIA) position in this litigation.

      This litigation concerns four Freedom of Information Act (FOIA) requests, one dated June 20, 2006, two dated July 3, 2006, and one dated July 10, 2006. The CIA received the June 20th and July 10th requests, and sent letters acknowledging the receipt of those two FOIA requests. See Complaint ¶¶ 28, 30. The CIA did not receive the two FOIA requests dated July 3rd. See Answer ¶¶ 11, 12, 29. I notified you that the CIA did not receive the two July 3rd FOIA requests before Defendants filed their answer on January 14, 2008.

      The CIA has completed its searching, processing, and releasing for the two FOIA requests it did receive. It is the CIA's position that the July 3rd FOIA requests purportedly sent to the CIA are not part of this litigation – and the CIA has no obligation to process these requests – because it did not receive them.

              Sincerely,

              Susan K. Ullman

              Susan K. Ullman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGG BLOCHE, M.D., *et al.*,       )
                                    )
              Plaintiffs,           )
                                    )
       v.                           )       Civil Action No. 07-2050 (HHK)
                                    )
DEPARTMENT OF DEFENSE, *et al.*,    )
                                    )
              Defendants.           )

**DECLARATION OF DAVID C. VLADECK**

1.  I am one of the lawyers for the plaintiffs in this case and make this declaration
based on personal knowledge.

2.  I am a professor of law at Georgetown University Law Center, and have served
on the Law Center's full-time faculty since 2002.  Prior to joining the Georgetown
faculty, I served as a staff attorney and then director at Public Citizen Litigation Group,
from 1977 to 2002.  For all of my professional career, I have concentrated my practice on
complex litigation, mostly in federal court.  One particular area of interest is litigation
under the Freedom of Information Act (FOIA).   I have extensive experience advising
clients on FOIA matters and in handling FOIA litigation.  The last time I checked, I was
counsel in no fewer than seventy FOIA cases reported on LEXIS.  I believe that I have
handled well over a hundred FOIA cases over the course of my career.

3.  I personally supervised the production and mailing of the two FOIA requests
that were sent on behalf of the plaintiffs in this case on July 3, 2006.  I personally attest
that two letters, both dated July 3, 2006, were sent to the Central Intelligence Agency
(CIA) on that date.  According to my calendar, July 3, 2006, was a Monday.   To the best
of my recollection, once the letters were printed, collated and signed by both my

colleague, Emily Read, Esq., and me, I placed them in properly addressed envelopes (the addresses were copies from the letters, with the addition of a notation saying "FOIA REQUEST" or something similar) and then put them in the box for outgoing mail at Georgetown University Law Center, to be sent by U.S. mail, first class, postage prepaid to the CIA. I did the same with respect to the other letters sent out that day, to eight other federal agencies. In my over six years on the faculty here, I have never, until now, had any complaint that mail I sent out using exactly the same procedure had not been provided to the U.S. Postal Service or had not been delivered to the addressee. Indeed, in my over thirty years of experience handling FOIA matters, this is the first instance in which an agency has asserted that it did not receive a FOIA request I sent by first class mail.

4. Had other agencies also failed to receive the requests, I would be willing to accept that the problem came from the Georgetown end of the mailing process. But seven out of nine agencies have acknowledged that they received both of the July 3 letters in a timely fashion. The Department of the Air Force claimed that it failed to receive one of the two July 3, 2006 letters, raising the question whether agency FOIA officers saw two letters from the same counsel arriving on the same day and decided, wrongly, that they were duplicate letters. In hindsight, it was probably a mistake to mail two letters on the same day. But the CIA's claim that it failed to receive *either* letter seems especially odd, and it raises the question whether the agency, which receives thousands of FOIA requests annually, simply mishandled the requests.

I hereby certify under the penalty of perjury
that the foregoing is true and correct.  Executed this
12th day of August, 2008, in Washington, D.C.

David C. Vladeck

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
JONATHAN H. MARKS and M. GREGG      )
BLOCHE, MD.,                                          )
                                                            )
                  Plaintiffs,                             )
                                                            )
                  v.                                        )          Civil Action No. 07-2050 (HHK)
                                                            )
DEPARTMENT OF DEFENSE, *et al.*,     )
                                                            )
                  Defendants.                          )
_____)

**[PROPOSED] ORDER**

Upon consideration of plaintiffs' Motion for an Order Compelling Defendant

Central Intelligence Agency ("CIA") to Process Two of Plaintiffs' Freedom of

Information Act ("FOIA") Requests, any responsive filing by defendant CIA, and the

entire record herein, it is this __ day of _____, 2008 hereby

ORDERED that defendant CIA is deemed charged with notice of plaintiffs' two

FOIA requests dated July 3, 2006 pursuant to FOIA as of November 2007; and it is

further

ORDERED that defendant CIA shall search for and identify records responsive to

plaintiffs' two FOIA requests dated July 3, 2006, and shall provide plaintiffs with all non-

exempt records, and segregable portions thereof, on or before October 1, 2008.


                                   _____
                                   HENRY H. KENNEDY, JR.
                                   UNITED STATES DISTRICT JUDGE