**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
_____

**M. GREGG BLOCHE, M.D. and**
**JONATHAN H. MARKS,**

                          **Plaintiffs,**


            **v.**                                      **1:07-CV-2050**
                                                            **(FJS)**

**DEPARTMENT OF DEFENSE;**
**COUNTERINTELLIGENCE FIELD ACTIVITY;**
**DEFENSE ADVANCE RESEARCH PROJECTS**
**AGENCY; DEFENSE INTELLIGENCE AGENCY;**
**UNITED STATES DEPARTMENT OF THE ARMY;**
**DEPARTMENT OF THE NAVY; UNITED STATES**
**AIR FORCE; CENTRAL INTELLIGENCE**
**AGENCY; and OFFICE OF THE DIRECTOR OF**
**NATIONAL INTELLIGENCE,**

                          **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**INSTITUTE FOR PUBLIC**           **ADERSON BELLEGARDE FRANCOIS, ESQ.**
**REPRESENTATION**
Georgetown University Law Center
600 New Jersey Avenue, NW
Suite 312
Washington, D.C. 20001
Attorneys for Plaintiffs

**UNITED STATES DEPARTMENT**       **ELIZABETH J. SHAPIRO, AUSA**
**OF JUSTICE**                     **KRISTINA ANN WOLFE, AUSA**
Civil Division, Federal Programs    **SUSAN K. ULLMAN, AUSA**
Branch
20 Massachusetts Avenue, NW
Suite 7000
Washington, D.C. 20530
Attorneys for Defendant Air Force

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Pending before the Court are Plaintiffs' motion for partial summary judgment against Defendant United States Air Force and Defendant United States Air Force's cross-motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] *See* Dkt. Nos. 38, 43.

**II. BACKGROUND**

Plaintiffs are bioethics experts who have written about the ethical issues that arise from the participation of healthcare personnel in the interrogation of military prisoners and other detainees. *See* Dkt. No. 38 at 2. Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, Plaintiffs submitted four separate requests for information concerning the government's use of interrogation tactics that medical professionals designed and implemented. Plaintiffs sent these requests to United States Department of Defense, Counterintelligence Field Activity, Defense Advanced Research Projects Agency, Defense Intelligence Agency, Department of the Army, Department of the Navy, United States Air Force, Central Intelligence Agency, and the Office of the Director of National Intelligence (collectively, "Defendant Agencies").

---

[1] Plaintiffs have also filed a motion for partial summary judgment against Defendant Department of the Navy and two units of Defendant Department of Defense, *i.e.*, the Office of the Assistant Secretary of Defense for Health Affairs and the Office of the Assistant Secretary of Defense for Health Affairs, Office of the General Counsel. *See* Dkt. No. 52. Defendants Department of the Navy and Department of Defense collectively cross-moved for partial summary judgment. *See* Dkt. No. 61. In light of the parties' representation that the Court's decision regarding the cross-motions of Plaintiffs and Defendant United States Air Force will serve as a "bellweather" for the remainder of this litigation, *see* Dkt. No. 38 at 2; Dkt. No. 72, this Memorandum-Decision and Order addresses only these "bellweather" motions.

Specifically, Plaintiffs' first request, dated June 26, 2006, "sought records addressing the duties and roles of healthcare personnel involved in interrogations, the policies for healthcare personnel involved in interrogations, the contents of specifically identified videoconferences regarding interrogation strategies, and the legality or ethics of using healthcare personnel in interrogations." *See* Dkt. No. 38-1 at ¶ 4.

Plaintiffs' second request, dated July 3, 2006, "sought contracts between the [Defendant Agencies] and healthcare personnel involved in interrogations, as well as records relating to the contracts." *See id.* at ¶ 5.

Plaintiffs' third request, dated July 3, 2006, "sought records addressing the use of foreign nationals to assist United States personnel with interrogations, as well as records addressing the legality, ethics, and effectiveness of specific interrogation techniques and programs." *See id.* at ¶ 6.

Plaintiffs' fourth request, dated July 10, 2016, "sought records addressing research on how government employees, United States service-members, military prisoners, and other detainees responded to certain interrogation techniques; methods of interrogation identified in the document entitled 'KUBARK Counterintelligence Interrogation' and any material pertaining to that document; and the legality or ethics of conducting research on certain interrogation techniques." *See id.* at ¶ 7.

Plaintiffs received no documents in response to their requests. *See* Dkt. No. 1 at ¶¶ 14-31. Accordingly, Plaintiffs filed suit on November 13, 2007, seeking to compel Defendant Agencies to respond to their FOIA requests. On February 11, 2008, the Court (Kennedy, J.) ordered Defendant Agencies to process and release documents responsive to Plaintiffs' FOIA requests on a rolling basis. *See* Dkt. No. 7. Defendant Agencies complied. Relevant to the pending motions, Defendant United States Air Force (hereinafter "Defendant") reviewed a total of 1,472 pages of responsive

documents and released 148, either in full or in part, to Plaintiffs.  *See* Dkt. No. 38 at 5.

On March 2, 2011, Plaintiffs moved for partial summary judgment, arguing that Defendant unlawfully withheld documents responsive to their FOIA requests.  *See id.*  Plaintiffs' original motion relied on a *Vaughn* Index and declarations that Defendant had supplied in September 2008. *See id.*  Before responding to Plaintiffs' motion, Defendant agreed to re-review all responsive documents and its exemption decisions.  *See* Dkt. No. 39 at ¶ 4.  After doing so, Defendant responded to Plaintiffs' motion by cross-moving for partial summary judgment, arguing that all of its exemption decisions were appropriate.  *See* Dkt. No. 43-1 at 1-2.  Defendant supplied an updated *Vaughn* Index with corresponding declarations and represented that it had made several additional disclosures.  *See id.* at 4; *see also* Dkt. Nos. 43-3, 43-4, 43-5, 43-6, 43-7, 43-8.  Both parties filed responses.  *See* Dkt. Nos. 43, 51.  Furthermore, the parties jointly filed an update that specified the documents that they still disputed.  *See* Dkt. No. 59; *see also* Dkt. No. 68 (providing an additional update).  Plaintiffs subsequently filed a supplemental memorandum with commentary about Defendant's most recent release of responsive documents, *see* Dkt. No. 71, prompting Defendant to move to strike the supplemental memorandum, *see* Dkt. No. 73.

Plaintiffs do not challenge the adequacy of Defendant's search for documents responsive to their requests.  *See* Dkt. No. 43-1 at 7 n.2.  The principal issue before the Court is whether Defendant properly redacted or withheld disputed documents under FOIA Exemption 5.  *See* Dkt. No. 59 at 1; *see also* 5 U.S.C. § 552(b)(5).  Furthermore, Plaintiffs argue that Defendant failed to release attachments (to emails or memoranda) of responsive documents and that Defendant did not properly segregate and disclose non-exempt material.  *See* Dkt. No. 59 at 2-3.

# III. DISCUSSION

**A.    Standard of review**

"A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record, which is located, was either produced to the plaintiff or is exempt from disclosure." *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 23 (D.D.C. 2011) ("*Judicial Watch-Treasury*") (citing *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980)).  The government agency has the burden to demonstrate that the documents the plaintiff requested are exempt from disclosure.  *See Assassination Archives & Research Ctr. v. Central Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation omitted).  Since the agency is in the unique position of "[p]ossessing both the burden of proof and all the evidence," the agency must provide the court and the challenging party "a measure of access without exposing the withheld information," which would "compromis[e] its original withholdings." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) ("*Judicial Watch-FDA*").  Therefore, "[t]o enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called 'Vaughn Index,' sufficiently detailed affidavits or declarations, or both." *Hussain v. United States Dep't of Homeland Sec.*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009) (citations omitted).  The *Vaughn* Index "serves three important functions that help restore a healthy adversarial process[.]" *Judicial Watch-FDA*, 449 F.3d at 146.  In that regard, the *Vaughn* Index

> "forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by

> giving the requester as much information as possible, on the basis of
> which he can present his case to the trial court."

*Id.* (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

The *Vaughn* Index and declarations must "describe the documents and 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"[2] *Judicial Watch-Treasury*, 796 F. Supp. 2d at 23-24 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984))) (other citations omitted).

When deciding whether summary judgment is appropriate in the FOIA context, a court is required to view the facts in the light most favorable to the FOIA requester. *See Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d 508, 514 (D.C. Cir. 1996) (citations omitted); *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (stating that "[t]he standard governing a grant of summary judgment in favor of an agency that claims it has fully discharged its FOIA disclosure obligations is well established[: . . .] the agency must show, viewing

---

[2] Plaintiffs assert that Defendant cannot rely on its newly submitted *Vaughn* Index and disclosures, which expanded on or changed some of the exemption claims regarding withheld or redacted documents. *See* Dkt. No. 46 at 4. However, this argument is disingenuous because the parties agreed that, after Plaintiffs submitted their motion for partial summary judgment, Defendant would "review all of its previous withholdings to determine if any additional information [could] be released," update its *Vaughn* Index, and provide new declarations. *See* Dkt. No. 39 at ¶ 4. Thus, there is no bad faith involved as Plaintiffs appear to suggest. Furthermore, the Court has discretion to allow Defendant to assert new exemption claims, especially when there is no prejudice to Plaintiffs. *See Shapiro v. U.S. Dep't of Justice*, Civil Action No. 13-555, 2016 WL 3023980, *6 (D.D.C. May 25, 2016) (allowing the defendant to assert some Exemption 5 claims on a motion for reconsideration due, in large part, to the lack of prejudice to the plaintiff). In this case, Plaintiffs had notice that Defendant would supplement its *Vaughn* Index and declarations and have responded accordingly. Thus, the Court will rely on Defendant's updated *Vaughn* Index and declarations when deciding these cross-motions.

the facts in the light most favorable to the requester, that there is no genuine issue of material fact" (citation omitted)).  However, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. Sec. Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting [*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)]).

**B.      Exemption 5 claims**

*1. Legal principles*

FOIA Exemption 5 allows government agencies to withhold, *i.e.*, not make available to the public, "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), *i.e.,* deliberative, predecisional memorandum, attorney-client communications, and attorney work product.  "If a document requested through FOIA 'would be "routinely" or "normally" disclosed [in civil discovery] upon a showing of relevance,' it must also be disclosed under FOIA[.]"  *Burka*, 87 F.3d at 516 (quoting *Grolier*, 462 U.S. at 26, 103 S. Ct. at 2213-14) (footnote omitted).  In other words, Exemption 5 covers "'those documents, and only those documents, normally privileged in the civil discovery context[.]'"  *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quotation omitted).

Whether the deliberative process, attorney-client, or attorney work-product privilege applies depends on the content of each document and the role it plays in the decisionmaking process. Therefore, "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and

correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (citations omitted). "Without a sufficiently specific affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process[, attorney-client, or attorney work-product] privilege claim." *Judicial Watch, Inc. v. United States Postal Serv.*, 297 F. Supp. 2d 252, 259-60 (D.D.C. 2004) ("*Judicial Watch-Postal Service*") (citation omitted). Therefore, "[a]n agency cannot meet its statutory burden of justification by conclusory allegations" but instead "must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA." *Mead Data Cent.*, 566 F.2d at 258 (citation omitted).

### a. Deliberative process privilege

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *Sears, Roebuck & Co.*, 421 U.S., at 150, 95 S. Ct. 1504). "The privilege's rational is that advice and information would not flow freely within an agency if such consultative information were open to public scrutiny." *Judicial Watch-Postal Service*, 297 F. Supp. 2d at 258 (citations omitted) (stating that "Exemption 5 . . . allows agency staffers to provide decisionmakers with candid advice without fear of public scrutiny"). In sum, the deliberative process privilege functions "to prevent injury to the quality of agency decisions." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).

To invoke the deliberative process privilege, an agency must show that an allegedly exempt

document is both "'predecisional' and 'deliberative.'" *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991) (citations omitted). Material is "predecisional if 'it was generated before the adoption of an agency policy[.]'" *Judicial Watch-FDA*, 449 F.3d at 151 (quoting [*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854,] 866 [(D.C. Cir. 1980)]). However, "the exemption does *not* 'turn[] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared.'" *Access Reports*, 926 F.2d at 1196 (quoting [*Sears*, 421 U.S. at 151]) (other citation omitted). Rather, "[t]o satisfy the predecisional element, the agency need only 'identify[] the decisionmaking *process*' to which the withheld documents contributed." *Elec. Frontier Found. v. United States Dep't of Justice*, 890 F. Supp. 2d 35, 52 (D.D.C. 2012) (quoting [*Access Reports*, 926 F.2d at 1196]). Furthermore, "[t]he identity of the parties to the [document] is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

A "deliberative" document is one that is "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). To be characterized as deliberative, the document must "reflect the give and take of the deliberative process[.]" *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) (citation omitted). In other words, deliberative documents are those "'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (quotation omitted). Although "[p]urely factual material usually cannot be withheld under

Exemption 5," it can be where "it reflects an 'exercise of discretion and judgment calls'" and where its exposure would enable the public to examine an agency's deliberative processes. *Ancient Coin Collectors Guild v. United States Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (citation omitted); *see also Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (stating that, "[t]o fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*" (citations omitted)). Protecting factual material created in a discretionary way "protect[s] the *process* by which policy is formulated." *Petroleum Info. Corp.*, 976 F.2d at 1431 (citations omitted); *see also Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1123-24 (D.C. Cir. 1989) (stating that "[t]he pertinent issue . . . is what harm, if any, the [document's] release would do to [an agency's] deliberative process").[3]

---

[3] Plaintiffs raise the preliminary argument that Defendant has improperly asserted the deliberative process privilege for documents that "were not involved in the process of formulating agency policy within the meaning of the privilege." *See* Dkt. No. 46 at 8-9. Specifically, Plaintiffs argue that Defendant redacted a number of documents related to training agency employees. *See id.* at 9 (citing AF5, AF13, AF18, AF19-AF20, AF37, AF83-AF84, and AF191). Even if the Court were to agree that training materials are not "policy" *per se*, Plaintiffs' proposed definition of the deliberative process privilege is unduly narrow and ignores numerous cases in which the courts have stated that the deliberative process privilege applies to the process of formulating government "decisions" as well as government "policies." *See, e.g., Dep't of Interior v. Klamath Water Users Protective Ass'n.*, 532 U.S. 1, 9 (2001) (stating that the "deliberative process [privilege] covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental *decisions* and *policies* are formulated'" (emphasis added) (quoting *Sears, Roebuck & Co.*, 421 U.S., at 150, 95 S. Ct. 1504)); *Ctr. for Biological Diversity v. Norton*, 336 F. Supp. 2d 1149, 1152 (D.N.M. 2004) (rejecting a similar argument that the deliberative process privilege did not apply to the documents withheld involving a "scientific decision" rather than a decision that involved the formulation of government policy (citations omitted)); *Davis v. City of New York*, No. 10 Civ. 0699, 2011 WL 1742748, *6 (S.D.N.Y. May 5, 2011) (stating that "whether training materials can be considered a *policy* or *decision* in the context of the deliberative process privilege is an issue of first impression" (emphasis added)).

(continued...)

***b. Attorney-client privilege***

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. . . . The privilege also protects communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.' . . ." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (internal quotation and other citation omitted). "In the FOIA context, the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege." *Judicial Watch-Treasury*, 796 F. Supp. 2d at 33 (citation omitted). To invoke the privilege, a defendant "'must show that the withheld document (1) involves confidential communications between an attorney and his client and (2) relates to a legal matter for which the client has sought professional advice.'" *Id.* (quoting *Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 1, 16 (D.D.C. 2004)). "However, the attorney-client privilege does not give the agency the ability 'to withhold a document merely because it is a communication between the agency and its lawyers.'" *Cuban v. Sec. Exch. Comm'n*, 744 F. Supp. 2d 60, 78 (D.D.C. 2010), *on reconsideration in part*, 795 F. Supp. 2d 43 (D.D.C. 2011) (quoting [*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004)]). Rather, the defendant agency must show that it intended "that the information [it] provided to its lawyers . . . [was] confidential and was not

---

[3](...continued)
    Nonetheless, "[n]ot every minor question that is contemplated by an agency or employee thereof, and the way that question is answered, can be considered an agency policy or decision." *Davis*, 2011 WL 1742748, at *6. Some materials can be characterized as minor and therefore not qualify for the privilege, *e.g.*, deliberations concerning the best practices for training on how to use Microsoft Word. However, Plaintiffs' categorical approach to training materials is not justified. Therefore, the Court finds that predecisional and deliberative documents made to create training materials may, under certain circumstances, fall within the ambit of Exemption 5's deliberative process privilege.

disclosed to a third party." *Id.* (citation omitted).

### c. Attorney work-product privilege

The attorney work-product privilege protects "documents and tangible things that [an attorney] prepare[s] in anticipation of litigation or for trial[.]" Fed. R. Civ. P. 26(b)(3). To qualify under this privilege, an attorney must have prepared or obtained the document "because of" the threat of litigation, *i.e.*, "the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re: Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (citations omitted). The "mere possibility" of litigation is not enough to invoke the privilege. *Coastal States Gas Corp.*, 617 F.2d at 865. In that regard, "if an agency were entitled to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." *Id.*

### d. Segregability

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent.*, 566 F.2d at 260 (D.C. Cir. 1977) (footnote omitted). Nonetheless, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted).

Such a presumption may be overcome by a "quantum of evidence," which means that the plaintiff must, at least, "'produce evidence that would warrant a belief by a reasonable person'" that segregable material exists.  *Id.* (quotation omitted).  "[A]n agency may satisfy its segregability obligations by (1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material."  *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 302 (D.D.C. 2013) (citing *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" is "sufficient for [the segregability] determination")) (other citation omitted).

### e. Analysis of Defendant's exemption claims

The parties have agreed that their dispute involves only the following documents as to Exemption 5: AF5, AF7-AF8, AF9-AF10, AF13, AF14, AF18, AF19-AF20, AF21-AF23, AF26-AF27, AF27a-AF27b, AF28, AF29, AF30-AF32, AF37, AF47-AF55, AF74-AF75, AF76-AF77, AF83-AF84, AF86-AF87, AF174, AF191, AF197-AF199, AF205-AF209, AF300-AF303, AF316-AF319, AF331-AF394.[4]  Furthermore, the parties dispute whether Defendant has released all reasonably segregable information in the following documents: AF3-AF4, AF26-AF27a, AF27b, AF28-AF33, AF57-AF59, AF65-AF70, AF78, AF86-AF88, AF90-AF127, AF197-AF233, AF323-AF324, AF366-AF394, AF398-AF414, AF417-AF418, AF425-AF426, and AF429.

The Court will address each of these disputed documents in turn.

---

[4] The parties originally included AF143 and AF170 in this list; however, Defendant has since released those documents in their entirety. *See* Dkt. No. 71.

**AF3-AF4**.  The document itself is an internal memorandum, the subject of which is "Review of Detainee Abuse Reports," the purpose of which is to "[p]rovide SG/SG2 with a review of the specific medical findings in the reports." *See* Dkt. No. 38-2 at 6, AF3.  The redacted material includes the majority of the discussion section, the recommendation, and the title of one of the documents that was an attachment. *See id.* at 6-7, AF3-AF4.

In its declaration, Defendant asserts that "[t]he redacted information reveals the author's recommendations to superiors concerning appropriate/best case training scenarios, as well as his opinion on the current training methods for Behavioral Science Consultation Teams (BSCTS)." *See* Dkt. No. 43-3 at 3.  Plaintiffs generally argue that Defendant's justification is "implausible." *See* Dkt. No. 38 at 28.

Based on Defendant's description, the Court finds that the redacted portions of this document reflect the "give and take of the deliberative process[.]" *Pub. Citizen, Inc.*, 598 F.3d at 876.  Therefore, the Court concludes that Defendant properly redacted material on AF3-AF4.

**AF5 and AF13**.[5]  The "Purpose" of this document is "SMMAC pre-brief for decision on web-based training options." *See* Dkt. No. 38-2 at 8.  In its declaration, Defendant describes the redacted material as "edits and recommendations concerning Power Point training material for personnel involved in detainee operations." *See* Dkt. No. 43-3 at 4.  Based on this description, the Court finds that Defendant properly redacted the information as deliberations regarding the formulation of training materials.

**AF7-AF8**.  This document is entitled "Background Paper on AFMS Position for Army

_____

[5] These documents are identical and contain nearly identical justifications for their redactions. *See* Dkt. No. 38-2 at 8, 16; Dkt. No. 43-3 at 4-5.

Behavioral Science Consultation Teams (BSCT)." *See* Dkt. No. 38-2 at 10. The redacted portions

fall under the headings "Ethical Issues," "Policy Issues," and "Recommendations." *See id.*

Defendant, in its declaration, states that the "redacted material discusses the status and content of

draft DoDD for BSCTs and lists topics that the draft regulations do not address." *See* Dkt. No. 43-3

at ¶ 6(c)(4). Plaintiffs argue that Defendant has failed to "provide any information as to what

decision-making process was involved or what role the document played in the process." *See* Dkt.

No. 46 at 12.

    Although Defendant's description is not overly detailed, it sufficiently indicates that the

document discusses topics related to creation of a DoDD (Department of Defense Directive). Thus,

the Court concludes that the document is predecisional, reflecting the process of formulating a

DoDD, and deliberative, reflecting the recommendations and the give and take of forming policy.

Therefore the Court concludes that Defendant's redactions were proper.

    **AF9-AF10**. This document is entitled "Bullet Background Paper on Detainee Health Teams

in Detainee Operations." *See* Dkt. No. 38-2 at 12. The redacted portions fall under the headings

"Background," "Discussion," and "Recommendations." *See id.* Defendant states in its declaration

that the

> redacted material discusses questions raised by other
> commands/offices regarding whether the current policies were being
> followed and the current status of those recommendations which
> would make changes. The redactions also include subordinates'
> recommendations to senior leadership concerning oversight of the
> detainee health team operations program.

*See* Dkt. No. 43-3 at ¶ 6(c)(4).

Plaintiffs argue that the mere mentioning of current policy is "not itself predecisional and

deliberative." *See* Dkt. No. 46 at 13 (citing *E.B. v. N.Y. City Bd. of Educ.*, 233 F.R.D. 289, 292 (E.D.N.Y. 2005)).  Plaintiffs also argue that the location of the redacted information "appears" and "suggests" that Defendant is redacting factual information that does not fall within the exemption. *See id.*

"Even after a path has been cut by an agency, 'it is the very process of debating, shaping, and changing a . . . policy that needs candor, vigorous to-and-fro, and freedom of expression.'" *Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 162 (D.D.C. 2012) (quoting *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 16 (D.D.C. 2004)) (other citation omitted).  Thus, contrary to Plaintiffs' argument, redaction of material that discusses how the current policy is implemented and potential recommendations for changes are properly characterized as predecisional and deliberative.  Furthermore, Plaintiffs' assertion that Defendant has impermissibly redacted factual information are without foundation and are insufficient to rebut Defendant's statements in its declaration.  *See SafeCard Servs., Inc.*, 926 F.2d 1197 at 1200 (holding that "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents'" (quotation omitted)).  Therefore, the Court finds that Defendant's redactions were proper.

**AF14**.  In its declaration, Defendant states that "[t]he redacted material is a staff summary sheet including a draft synopsis of [a] DoD Directive on Medical Support for Detainee Operations. The redacted material also contains the Air Force Assistant Surgeon General's opinions and recommendations on the draft directive to SAF/MR."  *See* Dkt. No. 43-3 at 5.  Defendant's description clearly satisfies the requirement that this document includes predecisional and deliberative information.  Therefore, the Court finds that Defendant properly redacted information

from this document.

**AF18**.  Defendant redacted one sentence in this document under the heading "Recommendation," *see* Dkt. No. 38-2 at 21; and Defendant states in its declaration that it "contains the author's recommendation regarding appropriate training of personnel assigned to BSCT duties[,]" *see* Dkt. No. 43-3 at 5.  Although Defendant's declaration lacks some detail, the context of the entire document describes an operating training program; thus, it is likely that the recommendation included predecisional and deliberative discussions regarding how to implement such training.  *See Coastal States Gas Corp.*, 617 F.2d at 866 (explaining that "[d]ocuments which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that . . . is as yet only a personal position").  Therefore, the Court finds that Defendant properly redacted this sentence from AF18.

**AF19 and AF20**.  These two documents are entitled "Talking Paper on Health Affairs Policy Memorandum on Training for Health Care Providers in Detainee Operations" and "Talking Paper on Proposed Policy Memorandum on Training for Health Care Providers in Detainee Operations."  *See* Dkt. No. 38-2 at 22-23.  The redacted portions are in the "Purpose" and "Recommended Action" sections.  *See id.*  Defendant states in its declaration that the "redacted material discusses policy formation and provides recommendations with respect to training for health care providers in detainee operations.  This recommendation comments upon and evaluates a sister service's training format, identifying potential problems and improvement areas."  *See* Dkt. No. 43-3 at 5.[6]  Plaintiffs reiterate their argument that recommendations concerning training do not

_____

[6] Defendant further represents that the redacted information in AF19 and AF20 is identical, thus the reason for applying the exemption is the same.  *See* Dkt. No. 43-3 at 5.

qualify for deliberative process protection. *See* Dkt. No. 46 at 13. Furthermore, Plaintiffs assert that the conclusory statement that the redactions discuss "policy formation" does not indicate the decision making process involved or what role the documents played in that process. *See id.* at 13-14.

As recounted above, the deliberative process privilege may protect deliberative and predecisional discussions regarding the creation of training materials if they reflect major decisions or policy. Determining how Defendant is going to train its medical professionals to interrogate detainees is a major policy decision. Furthermore, the privilege protects "documents and other materials that would reveal 'advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quotation and other citations omitted). Defendant has alleged that the redactions reflect deliberations regarding recommendations for improving the training program.

However, part of Defendant's declaration does not describe deliberative information. The declaration states that the "recommendation comments upon and evaluates a sister service's training format, identifying potential problems and improvement areas." *See* Dkt. No. 43-3 at ¶ 6(c)(12). Commenting on another agency's training format is not deliberative, but rather explanatory. The declaration's description does not reflect the "give and take of the deliberative process[.]" *Pub. Citizen, Inc.*, 598 F.3d at 876. Although information that compares the sister service's training program to Defendant's own training program might possibly be described as deliberative, Defendant has not made this showing. *See Mead Data Cent.*, 566 F.2d at 256 (stating that "[e]xemption five is intended to protect the deliberative process of government and not just deliberative material" (citation omitted)).

Accordingly, the Court orders Defendant to release any material contained in AF19 and AF20 that discusses the sister service's training program.

**AF21-AF23**.  This document is entitled "Bullet Background Paper on Behavioral Science Consultation Team (BSCT) Issues."  *See* Dkt. No. 38-2 at 24-26.  The only portions that Defendant did not redact are the title and the word "Recommendations" on the final page.  *See id.*  In its declaration, Defendant states that the

> three-page bullet background paper is being withheld in its entirety
> because it contains opinions and recommendations concerning BSCT
> issues.  The author of this document uses it to point out
> issues/problems concerning all aspects of the program, including
> training, leadership, structure, and policy.  The author further uses this
> document to suggest potential fixes.

*See* Dkt. No. 43-3 at 5.

Plaintiffs argue that Defendant's declaration "does not explain what decisionmaking process was involved or what role the documents played in that process."  *See* Dkt. No. 46 at 14.

Courts recognize that "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies" and should be "wary of interfering with this process."  *Sears, Roebuck & Co.*, 421 U.S. at 151 n.18.  As stated before, "[e]ven after a path has been cut by an agency, 'it is the very process of debating, shaping, and changing a . . . policy that needs candor, vigorous to-and-fro, and freedom of expression.'"  *Judicial Watch, Inc.-Homeland Security*, 841 F. Supp. 2d at 162 (quoting *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 16 (D.D.C. 2004)) (other citation omitted).  Defendant explicitly states that it used this document to discuss the propriety of all aspects of the BSCT program and to discuss possible changes in policy.  Plaintiffs' generic argument ignores Defendant's declaration and the context of the document.  It is self-evident

that discussing changes in the BSCT program was the "decision-making process . . . involved" and the "role the documents played in that process" was to put the author's suggestions on paper. Since the document contains points that are critical to Defendant's internal deliberations about whether, where, and how to advance the BSCT program, it is part of the deliberative process by which Defendant decided how to proceed. *See Sierra Club v. United States Dep't of Interior*, 384 F. Supp. 2d 1, 19 (D.D.C. 2004) (stating that "[a] memo making recommendations or presenting options reflects the essence of internal deliberations that Exemption 5 was designed to protect" (citation omitted)).

In addition, Plaintiffs argue that Defendant must segregate and release portions of this document discussing existing policy. *See* Dkt. No. 46 at 14. The title of this document, "Background Paper," indicates that it may contain some discussion of existing policy. Defendant has failed to explain why it did not segregate and release such information if it exists. Therefore, the Court orders Defendant to segregate those parts of AF21-AF23, if any, that discuss existing policy from the remainder of the document and release those parts of AF21-AF23 that discuss said existing policy.

**AF26-AF27a, AF27b**. This document depicts the slides from a PowerPoint presentation entitled "Review of Detainee Abuse Reports." *See* Dkt. No. 38-2 at 29. Defendant asserts that the attorney-client privilege protects this document. *See* Dkt. No. 43-3 at 9. Defendant's declaration explains that an agency attorney analyzed several detainee abuse reports and another attorney analyzed the Hippocratic Oath. *See id.* Plaintiffs contend that Defendant's admission that the PowerPoint presentation discusses the Hippocratic Oath proves that the document contains at least some factual information that is not privileged; and, therefore, Defendant must segregate and release

that factual information.

Since these slides are a communication from an attorney to his client, they are privileged only insofar as they rest on confidential information obtained from the client. Defendant, in its declaration, offers no explanation as to what confidential client communication underlies these slides. Although it is possible that the detainee abuse reports themselves are confidential, Defendant does not make such an assertion. Moreover, information regarding the Hippocratic Oath is not derived from confidential information from the client but is rather "generally applicable legal advice" that does not normally "rest . . . on the factual particularities conveyed in a typical confidential communication by a client." *Am. Immigration Council v. United States Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 223 (D.D.C. 2012) (finding that the attorney-client privilege did not apply to slides that communicated only general legal advice). Therefore, the Court orders Defendant to release AF26-A27a, AF27b in their entirety.

**AF28-AF29**. Defendant withheld this entire document, which it describes as a "[two] page draft memorandum providing draft guidance from the SG to unnamed recipients (not a final draft). It contains draft guidance on policy and procedures for medical support for detainee operations." *See* Dkt. No. 43-3 at 5.

Plaintiffs argue that the vague description of this document in Defendant's declaration does not "specifically identify a decision-making process, nor does it provide any indication of what role the document played in that process." *See* Dkt. No. 46 at 10. Furthermore, Plaintiffs assert that, at a minimum, Defendant must release any part of the document that has since become final agency policy. *See id.* at 11. Defendant, on the other hand, contends that its description in its declarations

is sufficient to carry its burden under the law.[7]  *See* Dkt. No. 43-1 at 13; *see also* Dkt. No. 51 at 9-10.

"Without a sufficiently specific affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process privilege claim." *Judicial Watch-U.S. Postal Service*, 297 F. Supp. 2d at 260 (citations omitted).  Therefore, "[a]n agency cannot meet its statutory burden of justification by conclusory allegations" but instead "must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA." *Mead Data Cent.*, 566 F.2d at 258 (citation omitted).  In this case, Defendant merely labels this document "draft guidance for policy and procedures for medical support detainee operations." *See* Dkt. No. 43-3 at 5.  There is no factual basis to support Defendant's claim. *See Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (stating that "it is enough to observe that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt"); *see also Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979) (stating that "'conclusory and generalized allegations of exemptions' are unacceptable" (footnote omitted)).  Furthermore, "[w]hen identifying a document as a draft, the defendant must indicate whether the draft was '(1) "adopted formally or informally, as the agency position on an issue;" or (2) "used by the agency in its dealings with the public."'" *Citizens for Responsibility & Ethics in Wash. v. Nat'l Archives & Records Admin.*, 583 F.

---

[7] Defendant argues that its new declaration explains that AF28-AF29 "discuss[es] 'the role of physicians in military missions and the relations to the Hippocratic Oath' and 'contain[s] the Air Force Surgeon General's opinions and recommendations for decision-makers.'" *See* Dkt. No. 43-1 at 13.  Defendant cites its declaration, but the declaration does not include these quoted phrases.  *See* Dkt. No. 43-3 at 5.  It appears that Defendant abandoned this claimed justification in its reply brief, which simply restates what is actually said in the declaration.  *See* Dkt. No. 51 at 9.

Supp. 2d 146, 164-65 (D.D.C. 2008) (quoting *Judicial Watch II*, 297 F. Supp. 2d at 261).

Defendant has done neither and, therefore, has not met its burden. Accordingly, the Court orders

that Defendant release AF28-AF29 in its entirety.

**AF30-AF32**. Defendant withheld this document in its entirety. Its declaration describes the

document as

> draft versions of a document prepared by the Air Force Surgeon
> General for then unnamed parties in which he analyzes various policy
> memoranda regarding medical support of detainee operations, to
> include both DoD and Air Force policies. The Surgeon General
> selected key facts to present from a larger body of facts, such that
> release would reveal the deliberative process. The withheld
> documents include handwritten notes as well as tracked changes and
> applicable discussions.

*See* Dkt. No. 43-3 at 5-6.

Defendant's description of this document is nearly identical to its description in AF28-AF29 and

merely labels the document a "draft" without sufficiently describing the propriety of its claimed

exemption. Therefore, the Court orders Defendant to release document AF30-AF32 in its entirety.

**AF37**. Defendant withheld this document in its entirety because it "contain[s] questions and

concerns voiced by the Chief, Expeditionary Medical Skills Division and the Chief Consultant for

Internal Medicine Services regarding the development of policy for online training for BSCTs." *See*

Dkt. No. 43-3 at 6. Based on this description, the Court concludes that the document is deliberative

and predecisional and that Defendant properly withheld it.

**AF47-AF55**. Defendant withheld these documents in their entirety. In its declaration,

Defendant states that these documents "include discussions and advice given by the Legal Advisor

to the Surgeon General and the Chief Consultant for Internal Medicine Services concerning Law of

Armed Conflict (LOAC) issues raised by the clients involving medical involvement in detainee operations." *See* Dkt. No. 43-3 at 9. Defendant's description of these documents insufficiently invokes the attorney-client privilege. Defendant fails to describe with any particularity whether these discussions were meant to be confidential and the purpose for which the clients sought the attorney's advice. Therefore, the Court orders Defendant to release documents AF47-AF55 in their entirety.

**AF74-AF75**. Defendant withheld this document in its entirety and describes it as a "draft which includes edits and notes regarding BSCTs[,] . . . cover[ing] issues such as the leadership structure of BSCT, BSCT composition, security clearances, and training." *See* Dkt. No. 43-3 at 7. Plaintiffs contend that Defendant's description reveals that this document concerns current policy, not the formulation of new policy. *See* Dkt. No. 46 at 16. The Court agrees; Defendant's description of this document indicates that it is merely a draft document describing pre-existing policy. To the extent that there are notes regarding the formulation of this document, they may be privileged; however, it is not clear at all, from Defendant's description, whether Defendant should have segregated factual information from information that is deliberative. Therefore, the Court orders Defendant to release document AF74-AF75 with appropriate redactions, *i.e.,* segregating factual information from deliberative information, redacting the deliberative information and releasing the factual information.

**AF76-AF77**. According to Defendant, the redacted portions of this document "discuss[] potential additions, clarifications, and areas of concern regarding the BSCT program and policy." *See* Dkt. No. 43-3 at 7. Furthermore, Defendant redacted information discussing its "concerns with policy recommendation of others." *See id.* Although Defendant does not provide much detail

regarding the role the document played in formulating policy, it is clear that these comments represent the sort of give-and-take that the deliberative process privilege was meant to protect. Therefore, the Court finds that Defendant has properly redacted portions of this document.

**AF83-AF84**.  In its declaration, Defendant states that "[t]hese emails were withheld in full because they contain discussions by the Chief Consultant for Internal Medicine Services regarding training requirements for personnel involved in detainee operations.  The emails detail various ideas and suggestions as to what training requirements should be implemented."  *See* Dkt. No. 43-3 at 8. Based on this description, it is clear that the deliberative process privilege applies; and, therefore, the Court finds that Defendant properly withheld AF83-AF84.

**AF86-AF87**.  In its declaration, Defendant states that it withheld this document in its entirety "because it contains attorney-client communications concerning advice sought by the Surgeon General's division from the servicing Judge Advocate."  *See* Dkt. No. 43-3 at 9.  Plaintiffs argue that this description is too conclusory and fails to show that these discussions were confidential.  *See* Dkt. No. 46 at 24.  Indeed, Defendant's declaration fails to describe with any particularity what advice the client sought, what facts the attorney was using, and whether the communication was confidential.  As recounted above, the attorney-client privilege applies only to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance[,]" *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citations omitted), and to an attorney's "communication [to the client] based on confidential information provided by the client," *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) (citation omitted).  Moreover, "[i]n a FOIA case, '[t]he burden is on the agency to demonstrate . . . that the materials sought . . . have not been improperly withheld.'" *Pub Employees for Envtl. Responsibility v. U.S. Envtl. Protection Agency,*

211 F. Supp. 3d 227, 231 (D.D. C. 2016) (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 142, 109 S.

Ct. 2841, 106 L. Ed. 2d 112 (1989)).

Defendant's conclusory declaration is insufficient to meets its burden; and, therefore, the

Court orders Defendant to release AF86-AF87 in its entirety.

**AF174**. Defendant redacted a portion of this document under the deliberative process

privilege because, according to Defendant, the information "is an OSI agent's direct and unfiltered

opinions as to how to improve operations involving polygraphers, as well as the leadership of

deployed polygraphers." *See* Dkt. No. 43-4 at 5. Based on Defendant's description of this

document, the Court finds that Defendant properly redacted portions of this document under the

deliberative process exemption.

**AF191**. Defendant asserts that this document "is an intra-agency email from January 11,

2005, forwarding a copy of interrogation training slides." *See* Dkt. No. 43-7 at 3. Defendant further

claims the deliberative process privilege, the attorney-client privilege, and the attorney work-product

privilege in the most conclusory of fashions.[8] *See id.* As recounted above, "[a]n agency cannot

[8] In that regard, Defendant states the following:

> The record is protected under the attorney client privilege because
> it is a document related to confidential communications between an
> attorney and client. The attorney work product privilege also
> applies because the document was prepared by attorneys in
> reasonable anticipation of litigation. The record also falls within
> the pre-decisional, deliberative process privilege because it
> provides analysis, opinions, and recommendations on interrogation
> policy.

*See* Dkt. No. 43-7 at 3.

Merely reciting boilerplate language is insufficient to justify withholding documents requested

(continued...)

meet its statutory burden of justification by conclusory allegations" but instead "must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA." *Mead Data Cent.*, 566 F.2d at 258 (citation omitted). The Court finds that Defendant has failed to justify its withholding of this document and, therefore, orders Defendant to release AF191 in its entirety.

**AF197-AF199**. Defendant asserts that this document "is a copy of the 18 January 2005 memorandum signed by all of the Service Judge Advocate Generals and Legal Counsel to the Chairman of the Joint Chiefs of Staff." *See* Dkt. No. 43-7 at 3. Defendant further claims the deliberative process privilege, the attorney-client privilege and the attorney work-product privilege in the most conclusory of fashions.[9] *See id.* As with AF191, Defendant has failed to provide a sufficiently detailed justification for withholding AF197-AF199. Therefore, the Court orders Defendant to release AF197-AF199 in its entirety.

**AF205-AF209**. Defendant withheld these pages in their entirety. Defendant's *Vaughn* Index describes these pages as a "Working Copy of Report: Air Force Judge Advocate Involvement in the Development of Department of Defense Interrogation Technique Policy." *See* Dkt. No. 43-8 at 7. Moreover, Defendant explains in its declaration that this document "is an unsigned, undated memorandum from the Air Force Judge Advocate outlining AF/JA involvement in the development of DoD interrogation technique policy." *See* Dkt. No. 43-7 at 4. Defendant further explains that it

---

[8](...continued)
under the FOIA.

[9] Defendant's statement in its declaration for this document is identical to the statement Defendant makes for AF191.

withheld this document because of the attorney-client privilege and work-product doctrine.[10] *See id.* Plaintiffs' arguments to the contrary center on Defendant's previous justification for withholding the document. *See* Dkt. No. 38 at 29-30. The Court concludes that Defendant has appropriately explained its reason for withholding this document and, therefore, finds that Defendant properly withheld AF205-AF209.

**AF300-AF303**. Defendant states in its declaration that these documents are "SAF/GC email communication with the Secretary of the Air Force dated May 10, 2004, Subject: Interrogation project." *See* Dkt. No. 43-5 at 3. Defendant further asserts that "[t]his document contains communication from the Air Force General Counsel to the Secretary of the Air Force concerning detainee combatant status and resulting legal analysis." *See id.* The redacted portion of this document is a small section followed by the full text of a *Washington Post* article entitled "Pentagon Approved Tougher Interrogations." *See* Dkt. No. 38-7 at 6. Defendant fails to describe the context of the legal analysis provided and merely states that this document is "not simply a repetition of what is in the article." *See* Dkt. No. 51 at 22.

Although some of the material in the email may be privileged attorney-client communication, the context of the email and the inclusion of the *Washington Post* article give the Court pause regarding whether Defendant properly segregated any factual material or general commentary regarding the article. Therefore, the Court orders Defendant to segregate and release all the factual material contained in AF300-AF303.

**AF316-AF319**. In its original declaration, Defendant stated that it could not find the

---

[10] Clearly, the attorney work product privilege does not apply as Defendant makes no mention of any pending litigation regarding this document in its declaration.

unredacted copy of this document; therefore, it could not comment on its exemption.  *See* Dkt. No.

43-5 at 3.  However, Defendant subsequently found the document and sent a letter to Plaintiffs

stating merely that it had "determined that the redacted information was properly redacted pursuant

to Exemption (b)(5)."  *See* Dkt. No. 43-1.  Given that Defendant has completely failed to provide

any justification for redacting this portion of the document, the Court orders Defendant to release an

unredacted copy of AF316-AF319.

    **AF331-AF394**.  Defendant states in its declaration that "[t]hese are documents that appear to

provide an analysis of international and domestic law, including the UCMJ, federal civil and

criminal law, state criminal law, etc. to the Working Group as they assessed the various issues

related to the interrogation of detainees prior to preparing their report."  *See* Dkt. No. 43-5 at 3.

Defendant asserts the deliberative process privilege and states that these documents "may also

qualify for Attorney Work Product and Attorney Client Privilege[.]"  *See id.*

    Plaintiffs argue that Defendant has failed to carry its burden to show that the documents are

predecisional and deliberative.  *See* Dkt. No. 46 at 17.  Moreover, Plaintiffs point out that Defendant

only claims that the documents "appear to provide" analysis on various issues.  *See id.*  However,

according to Plaintiffs, "[a] declaration that is unsure about the characteristics of documents that are,

after all, in the agency's possession cannot satisfy the agency's burden to justify its nondisclosure."

*See id.*

    It is unclear how these documents played a role in formulating any policy based on

Defendant's declaration.  Rather, it appears that this document was merely an informational analysis

given to the Working Group.  Defendant does not discuss what the Working Group was working on,

nor does it describe how this analysis played a role in any final decision.  More importantly,

Defendant has failed to explain with any specificity why it could not disclose some of this document, which clearly includes purely factual information. Since Defendant's description is entirely inadequate, the Court orders Defendant to release AF331-AF394 in its entirety.

**AF57-AF59, AF65-AF70, AF78, AF90-AF127, AF197-AF204, AF210-AF233, AF323-AF324, AF398-AF414, AF417-AF418, AF425-AF426, AF429**. Defendant withheld these documents in their entirety. Plaintiffs' only argument in support of their position that Defendant should release these documents is that Defendant has failed to provide sufficiently detailed information in its declarations that "show with 'reasonable specificity' why the documents cannot be further segregated." *Armstrong v. Exec. Office of President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (citation omitted).

Defendant has described the following documents sufficiently to permit the Court to conclude that Defendant released all reasonably segregable information. **AF57-AF59** and **AF65-AF70** are emails discussing various elements of the BSCT program. *See* Dkt. No. 43-3 at 6. **AF78** is an email that contains opinions and recommendations regarding policy discussed at a senior committee meeting. *See id.* at 7. **AF90-AF107** are drafts regarding CONOPS. *See id.* at 8. **AF108-AF123** is an email chain discussing changes to a PowerPoint presentation. *See id.* **AF124-AF125** summarizes recommendations regarding the detainee interrogation policy and changes to draft versions of DoDDs and Army Regulations. *See id.* **AF127** is legal advice. **AF323-AF324** are notes from a working group meeting. *See* Dkt. No. 43-5 at 3. **AF398-AF410** are emails regarding various discussions on policy formation. *See id.* at 4. **AF411-AF414** are comments on a draft document. *See id.* at 5. **AF425-AF426** is an email regarding a draft legal opinion. *See id.*

Defendant, however, has not sufficiently described the following documents to show that it

could not have released segregable information. **AF200-AF201** is a proposed DoD Interrogation Policy with forwarding memorandum. It is possible that this document contains information that ended up becoming the agency's final policy or discusses some current policy. *See* Dkt. No. 43-7 at 3. Defendant describes **AF202-AF204** as a Talking Paper "discussing the status of 'Detainee and Interrogation Initiatives.'" *See id.* at 4. It is unclear how this document is privileged in the first place; but, at minimum, there is the possibility that segregable information exists. Furthermore, Defendant's descriptions of **AF210-AF231** are inadequate in that they merely give a brief description of the document and then conclude that the deliberative process, attorney-client communication, and attorney work-product privileges apply. In addition, **AF417-AF418** is an email regarding the issuance of a final report; thus, Defendant should release any information related to the final report. *See* Dkt. No. 43-5 at 5. Finally, **AF429** pertains to edits and comments to a final report; thus, Defendant should disclose this document to the extent it incorporated the edits into the final report or the edits merely discuss the contents of the final report.

In sum, the Court orders Defendant to release any segregable information contained in **AF200-AF201, AF202-AF204, AF210-AF231, AF417-AF418** and **AF429**.


**C.      Attachments withheld**

Plaintiffs argue that Defendant has not explained its failure to produce missing attachments to documents responsive to Plaintiffs' FOIA requests. *See* Dkt. No. 38 at 14. Plaintiffs claim that the following records contain attachments that are responsive to their FOIA requests: **AF3, AF4, AF14, AF196, AF304, AF310** and **AF312**.

Defendant argues that it performed an adequate search of its records and, unfortunately,

could not locate the documents listed as attachments in the above-referenced records.  *See* Dkt. No.

51 at 27-28.  Thus, according to Defendant, "'the fact that responsive documents once existed does

not mean that they remain in [its] custody today or that [it] had a duty under FOIA to retain the

records.'"  *See id.* at 27 (quoting *Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) (citing *Yeager*

*v. Drug Enforcement Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("A requester is entitled only to

records that an agency has in fact chosen to create and retain."); *Miller v. U. S. Dep't of State*, 779

F.2d 1378, 1385 (8th Cir. 1985) ("The fact that a document once existed does not mean that it now

exists; nor does the fact that an agency created a document necessarily imply that the agency has

retained it."))).

There is no basis to question Defendant's representation that it was unable to locate the

responsive attachments.  Therefore, the Court grants Defendant's cross-motion for partial summary

judgment insofar as it pertains to these attachments and denies Plaintiffs' motion regarding the same.


## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable

law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for partial summary judgment, *see* Dkt. No. 38, is

**GRANTED in part** and **DENIED in part**; and Defendant United States Air Force's cross-motion

for partial summary judgment, *see* Dkt. No. 43, is **GRANTED in part** and **DENIED in part**

consistent with this Memorandum-Decision and Order;[11] and the Court further

_____

[11] As a result of this Memorandum-Decision and Order, Defendant United States Air
Force must release the following:

(continued...)

**ORDERS** that Defendant United States Air Force's motion to strike Plaintiffs' additional memorandum, *see* Dkt. No. 73, is **DENIED as moot**; and the Court further

**ORDERS** that all Defendants, other than Defendant United States Air Force, shall re-review all exemptions they have claimed in their pending collective motion for summary judgment, *see* Dkt. No. 61, paying close attention to the segregability of factual information and the conclusory

---

[11](...continued)
(1) **AF19-AF20** - segregate and release any material that discusses the sister service's training program
(2) **AF21-AF23** - segregate and release any material that discusses existing policy
(3) **AF 26-AF27a, AF27b**
(4) **AF28-AF29**
(5) **AF30-AF32**
(6) **AF47-AF55**
(7) **AF74-AF75** - segregate and release any factual information
(8) **AF86-AF87**
(9) **AF191**
(10) **AF197-AF199**
(11) **AF200-AF201**
(12) **AF202-AF204**
(13) **AF210-AF231**
(14) **AF300-AF303** - segregate and release any factual information
(15) **AF316-AF319**
(16) **AF331-AF394**
(17) **AF417-AF418**
(18) **AF429**

nature of their declarations. Furthermore, the Court instructs Plaintiffs and all Defendants, other than Defendant United States Air Force, to confer and file a list of documents that are still in dispute within thirty (30) days of the date of this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: September 18, 2017
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge