# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |  |
|---|---|---|---|
| M. GREGG BLOCHE and | : | | |
| JONATHAN H. MARKS, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-2050 (RC) |
| | : | | |
| v. | : | Re Document No.: | 52, 61 |
| | : | | |
| DEPARTMENT OF DEFENSE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

**DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL JUDGMENT**

## I. INTRODUCTION

In this case arising under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiffs M. Gregg Bloche and Jonathan H. Marks seek documents from multiple federal government entities related to the role of medical professionals in the design and implementation of interrogation tactics in the early to mid-2000s. Presently before the Court are cross-motions for summary judgment with respect to three Defendant agencies' responses to Plaintiffs' FOIA requests—those agencies being (1) the Department of the Navy, (2) the Office of the Assistant Secretary of Defense for Health Affairs ("OASD-HA Policy"), and (3) the Department of Defense's Office of the Deputy General Counsel for Personnel and Health Policy ("OASD-HAGC").[1] Each of these three agencies performed its own search in response to Plaintiffs' requests, and Plaintiffs do not challenge the sufficiency of those searches. Plaintiffs have for

---

[1] As a formal matter, OASD-HA Policy and OASD-HAGC are not actually Defendants; they are instead components of a named Defendant, the Department of Defense. For simplicity, however, the Court will occasionally refer to them as Defendants in this opinion.

years, however, tussled with these agencies over the propriety of several FOIA exemptions that the agencies have asserted to withhold many responsive documents in full or in part. As the Court will explain below, the agencies have established that many of their claimed exemptions are proper—but not all. Where the agencies have fallen short, the Court concludes that summary judgment in neither side's favor is appropriate at this juncture. The Court instead orders that the agencies produce the documents at issue for *in camera* review and provide more specific justifications for the asserted claims, to which Plaintiffs will have an opportunity to respond. Defendants' motion is thus granted in part and denied in part, and Plaintiffs' motion is denied, though in part without prejudice.[2]

## II. LEGAL STANDARD

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)); *see also Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017) ("Congress enacted FOIA to give the public 'access to official information long shielded unnecessarily from public view.'" (quoting *Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*, 829 F.3d 741, 744 (D.C. Cir. 2016))). "The Act requires government agencies to make information available upon request, unless the information is protected by one of nine statutory 'exemptions.'" *Judicial Watch*, 847 F.3d at 738 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975)); *see also* 5 U.S.C. § 552(b).

---

[2] The parties' cross-motions for summary judgment (ECF Nos. 96 and 97) with respect to six other Defendant entities—the Army, the Defense Intelligence Agency, the Office of the Director of National Intelligence, Joint Task Force Guantanamo, United States Central Command, and the United States Special Operations Command—will be resolved in a separate forthcoming opinion and order.

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Prop. of the People, Inc. v. Office of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  To be entitled to summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A 'material' fact is one capable of affecting the substantive outcome of the litigation." *Pinson v. Dep't of Justice*, 313 F. Supp. 3d 88, 105 (D.D.C. 2018).  A dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmovant.  *Id.*

Applying these principles to the FOIA context, a government agency is "entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'"  *Prop. of the People*, 330 F. Supp. 3d at 380 (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).  "This burden does not shift even when the requester files a cross-motion for summary judgment because the Government ultimately has the onus of proving that the documents are exempt from disclosure, while the burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur."  *Id.* (internal quotation marks omitted) (quoting *Hardy v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017)).

To meet its burden, the agency may "rely on declarations that are reasonably detailed and non-conclusory."  *Pinson*, 313 F. Supp. 3d at 106.  Such declarations must "provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant

and correlating those claims with the particular part of the withheld document to which they apply.'" *Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). But exemptions must also be "narrowly construed." *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007). Agencies "cannot justify . . . withholdings on the basis of summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987)).

## III. ANALYSIS

In this case, the adequacy of the Defendants' searches is not at issue—as the Court noted above. Instead, Plaintiffs dispute only the validity of certain FOIA exemptions that Defendants have claimed. The majority of Plaintiffs' challenges relate to Defendants' invocations of the deliberative process privilege, which falls within the ambit of FOIA Exemption 5. *See* 5 U.S.C. § 552(b)(5). The Court therefore begins its analysis below with a discussion of that exemption. The Court then addresses three more discrete issues concerning: (1) Exemption 1, which permits the withholding of certain classified information relating to national defense or foreign policy, *see id.* § 552(b)(1); (2) Exemption 7(E), which permits the withholding of information related to "techniques and procedures for law enforcement investigations or prosecutions," *id.* § 552(b)(7); and (3) Exemption 6, which permits the withholding of information that "would constitute a clearly unwarranted invasion of personal privacy," *id.* § 552(b)(6).

## A.  Exemption 5 – The Deliberative Process Privilege

FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  The exemption thus "'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'—including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006)).

Relevant here is the deliberative process privilege, which protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Id.* at 38 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  The privilege exists "to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 9 (citations omitted).  The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* at 8–9.

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*." *Prop. of the People*, 330 F. Supp. 3d at 382 (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992)). A document qualifies if it is both pre-decisional and deliberative. *E.g.*, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  "Pre-decisional" communications are those that, unsurprisingly, "occurred before any final agency decision on the relevant matter." *Nat'l Sec.*

*Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). "[T]he term 'deliberative' does not add a great deal of substance to the term 'pre-decisional,'" but it "in essence" means "that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Id.*

### 1. Defendants' Claims of Deliberative Process Privilege

Here, all three Defendant organizations have cited the deliberative process privilege as a basis for withholding a variety of documents either in full or in part. Most of these documents, however, fall into at least one of two broad categories. The first category encompasses draft agency policy documents and the discussions surrounding them. The second involves the formulation of agency responses to statements or inquiries from other entities—like media organizations, public interest groups, and even other governmental departments.

In the abstract, both of these categories of documents fall within the scope of the deliberative process privilege—as long as each particular privilege claim is properly supported by the "relatively detailed justification" that FOIA requires, *Mead Data Cent., Inc.*, 566 F.2d at 251. With respect to the first category, although draft documents are not per se privileged, they are, by definition, pre-decisional, and they are "typically considered deliberative." *Hardy*, 243 F. Supp. 3d at 173–74 (citing *Coastal States Gas Corp v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). An agency of course may not elude disclosure requirements by simply labeling a document a "draft," *id.* at 174, but if it identifies a policy-oriented decisionmaking process to which the draft contributed, the privilege claim will usually be upheld. This is true regardless of whether a final version of the document is ever ultimately made public. *See Nat'l Sec. Archive*, 752 F.3d at 463 ("There may be no final agency document because a draft died on the vine. But the draft is still a draft and thus still pre-decisional and deliberative.").

With respect to the second category, courts have repeatedly found the deliberative

process privilege "to cover agency deliberations about how to respond to media inquiries

regarding prior agency actions, as well as discussions about press coverage of existing agency

policies, and suggested talking points about how to answer questions regarding the duties

assigned to agency employees." *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 118

(D.D.C. 2014) (citations omitted) (citing *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 736 F.

Supp. 2d 202, 208 (D.D.C. 2010); *Citizens for Responsibility & Ethics in Wash. v. Dep't of

Labor*, 478 F. Supp. 2d 77, 83 (D.D.C. 2007); and *Judicial Watch, Inc. v. Dep't of Commerce*,

337 F. Supp. 2d 146, 174 (D.D.C. 2004)). These decisions are grounded in the notion that

"internal deliberations about public relations efforts are not simply routine operational decisions:

they are 'deliberations about policy, even if they involve "massaging" the agency's public

image.'" *Comm. on Oversight & Gov't Reform, U.S. House of Reps. v. Lynch*, 156 F. Supp. 3d

101, 111 (D.D.C. 2016) (quoting *ICM Registry, LLC v. Dep't of Commerce*, 538 F. Supp. 2d

130, 136 (D.D.C. 2008)).

For the same reason, the privilege also covers determinations about how to respond to

statements or inquiries made by public interest groups, and it covers how to respond to Congress.

In those instances, too, the documents at issue memorialize the "ongoing decisionmaking about

'how the agency's activities should be described to the general public.'" *Competitive Enter. Ins.*,

12 F. Supp. 3d at 118 (quoting *Nat'l Sec. Archive v. FBI*, No. 88–1507, 1993 WL 128499, at *2

(D.D.C. Apr. 15, 1993)); *see also Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 320 F.

Supp. 3d 162, 177 (D.D.C. 2018) (responses to both press and Congress covered by privilege).

Because these kinds of public communications all require the "formulation [and] exercise of

agency policy-oriented judgment," they fall within the scope of the deliberative process

privilege. *Prop. of the People*, 330 F. Supp. 2d at 382 (emphasis omitted) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1435).

With these general principles in mind, Defendants' claims of deliberative process privilege here are proper as long as they are supported by a relatively detailed justification. Most claims are. An illustrative example of a document within the first category of claims is Navy 12, which is a 222-page compilation of "several draft documents, including a 106-page draft of Army Regulation (AR) 190-8 (Detainee Operations) that reflects attorneys' comments on the draft, which was created for the purpose of revising the previous revision of the same AR." Decl. of Major Sean D. Schrock, USMC ("Schrock Decl.") ¶ 17(b)(2), ECF No. 61-2. Attached to the draft AR are draft memorandums and "other internal documents providing legal advice and comment to senior service legal leaders upon the draft AR." *Id.* Because all of the drafts in this compilation are part of the decisionmaking process surrounding whether to amend AR 190-8, they are privileged.

Another example is OASD-HAGC 71–229, which "contains 15 different copies of the draft DoD Instruction . . . that led to the DoD Instruction 2310.08E, which is public." OASD-HAGC *Vaughn* Index, ECF No. 69-1 at 3. Most of these drafts, OASD-HAGC clarifies, also "include 'track changes' and marginal notes." *Id.* OASD-HAGC's contention that these drafts and the attached comments were "part of the pre-decisional deliberations among multiple DoD offices that led to the" finalization of the relevant Instruction, *id.*, is both "logical" and "plausible," *Wolf*, 473 F.3d at 374–75 (quoting *Gardels*, 689 F.2d at 1105). The privilege claim is therefore proper.

A third example—and one that does not involve a draft regulation or instruction—is OASD-HA Policy 660–90, which is a "draft of a portion of an investigation report" titled

"Medical Issues Relevant to Interrogation and Detention Operations." OASD-HA Policy *Vaughn* Index, ECF No. 69-2 at 17. The agency has provided less information about this document than the two preceding examples, but there is still enough to conclude that the draft report is privileged. As the agency has stated that the draft includes "preliminary opinions which do not reflect DoD's final decision," *id.*, it is clear that the draft was part of a policy-oriented decisionmaking process that culminated in either the finalization of the investigation report, or the decision to scrap the report. Either way, the draft is privileged.[3] *See Nat'l Sec. Archive*, 752 F.3d at 463.

There are plenty of good examples for the second category of documents as well. Take OASD-HA Policy 251–57, which the agency has explained "is an email string with attached draft talking points" that "was part of the pre-decisional deliberative process of preparing a DoD official for a media interview." OASD-HA Policy *Vaughn* Index, ECF No. 69-2 at 9; *see also, e.g., id.* at 9–10 (similar descriptions for OASD-HA Policy 244–48, 249–50, and 258–63); OASD-HAGC *Vaughn* Index, ECF No. 69-1 at 6 (similar description for OASD-HAGC 319–24). OASD-HAGC 547–51 is also illustrative: it includes the redaction of a pre-decisional

---

[3] All three of the above examples are admittedly fairly long documents. According to Plaintiffs, any parts of these and other similar drafts that were eventually "formally or informally adopted in final versions must be disclosed." Pls.' Opp'n to Defs.' Cross-Mot. for Summ. J. ("Pls.' Opp'n") at 14, ECF No. 62. This is not the law, though; FOIA does not require an agency to release portions of any draft that are ultimately repeated in the final policy. For one, as Defendants correctly note, this "would be a waste of time and elevate form over substance, as FOIA requesters would only receive what they already had." Defs.' Reply at 20, ECF No. 65. But also, even these repeat disclosures would have consequences for the agencies: they "would divulge information regarding 'decisions to insert or delete material or to change [the] draft's focus or emphasis' and thus 'would stifle the creative thinking and candid exchange of ideas necessary to produce good . . . work.'" *Hardy*, 243 F. Supp. 3d at 174 (alternation and omission in original) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987)). Such a dynamic is exactly that the deliberative process privilege is designed to prevent.

"comment from a DoD employee on a potential DoD response to an American Psychiatric Association . . . statement." OASD-HAGC *Vaughn* Index, ECF No. 69-1 at 13; *see also, e.g.*, *id.* at 14–15 (OASD-HAGC 557–62 being a draft response to the American College of Physicians; OASD-HAGC 587–88 being a draft response to a report by the American Medical Association). As is OASD-HAGC 453–87, which includes "draft briefing slides being circulated for comment within DoD . . . as part of the predecisional deliberations on information to brief a Congressional field office regarding the Army Field Manual" and its interrogation policy. *Id.* at 11; *see also id.* at 17 (OASD-HAGC 641–47: a draft white paper that was to be used to inform Congressional offices); OASD-HA Policy *Vaughn* Index, ECF No. 69-2 at 24 (OASD-HA Policy 851–52: email string "discussing how to respond to several questions from the Senate Armed Services Committee Staff."). For all of these documents, the relevant agency has provided enough information for the Court to conclude that the document memorializes the "ongoing decisionmaking about 'how the agency's activities should be described to the general public.'" *Competitive Enter. Ins.*, 12 F. Supp. 3d at 118 (quoting *Nat'l Sec. Archive v. FBI*, 1993 WL 128499, at *2). The documents are therefore privileged.

Having said all of this, Defendants have not provided sufficiently detailed justifications for all of the documents that they claim to be privileged. Unlike the examples above, a select few of Defendants' claims identify neither an internal *policy-oriented* decisionmaking process nor a possible public communication being planned to an outside entity. OASD-HA Policy 758–59, 761–62, and 765–66 all involve "a request from the Army Surgeon General to the Assistant Secretary of Defense for Health Affairs" and purportedly reflect "internal deliberations regarding a proposed response to the" Assistant Secretary. *See* OASD-HA Policy *Vaughn* Index, ECF No. 69-2 at 19–20. But the agency has never provided even a vague description of what the request

concerned, and it is not clear from the information provided that the Army Surgeon General's response to another Department of Defense official would constitute the kind of "public relations effort[]" that, say, a communication with Congress would. *Comm. on Oversight & Gov't Reform*, 156 F. Supp. 3d at 111 (quoting *ICM Registry*, 538 F. Supp. 2d at 136). As a result, the Court has no way of knowing whether the contents of these documents reflect "the formulation or exercise of . . . policy-oriented *judgment*." *Prop. of the People*, 330 F. Supp. 3d at 382 (quoting *Petroleum Info. Corp.*, 976 F.2d at 1435). For the same reasons, OASD-HA Policy 659, which is described merely as "handwritten notes" that "are personal and preliminary opinions," OASD-HA *Vaughn* Index, ECF No. 69-2 at 17, is insufficiently justified, as is OASD-HA Policy 28–35, which apparently contains drafts of "internal staff opinions on proposed policies"—policies that are never identified or described, *id.* at 2.[4]

In addition to these five documents, there are two OASD-HAGC claims that are also insufficiently supported. The first is OASD-HAGC 563–68, which is titled "Email: AMA Draft" and has apparently been released in part. OASD-HAGC *Vaughn* Index, ECF No. 69-1 at 14. The problem with respect to OASD 563–68 is that the agency's explanation for its redactions—however extensive they may be—is "N/A." *Id.* Thus, although it appears that this document might involve a draft of a public communication with the American Medical Association, the agency has not told the Court or Plaintiffs why certain material is privileged. The agency must justify its claim of privilege to meet its burden.

---

[4] In reviewing some document entries, the Court has been able to obtain additional context for the relevant agency's claim of privilege from the document's title. If, taking the title and the agency's explanation together, the Court was able to discern how a policy-oriented decisionmaking process was involved, it has upheld the claim of privilege. For the select few documents identified above, however, the title provides little, if any, additional information.

Then finally, OASD-HAGC 272 "is the coordination signature page" of a memo that was released to Plaintiffs in full. *Id.* at 4. According to OASD-HAGC, release of the signature page "would reveal the deliberative process of which components and signatories were required prior to the finalization of the memorandum." *Id.* But as another court in this circuit has already held, the names on a signature page "are indisputably 'factual.'" *Judicial Watch, Inc. v. Department of the Navy*, 25 F. Supp. 3d 131, 140 (D.D.C. 2014). They "cannot be described as the 'materials embodying officials' opinions,'" *id.* (quoting *Petroleum Info. Corp.*, 976 F.2d at 1434), "nor do they 'bear on the formulation or exercise of agency policy-oriented judgment,'" *id.* (quoting *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 298 (D.D.C. 2007)). To the contrary, it seems that a signature page would be the culmination of the policymaking effort, not part of the deliberations leading up to it. Thus, although the names themselves may potentially be redacted under FOIA Exemption 6, to withhold the document in full, OASD-HAGC must show how the page "implicate[s] any deliberative process that may have gone into the creation of the Memorandum as a whole." *Id.* OASD-HAGC has not done that.

All told, then, the Court grants Defendants' motion for summary judgment with respect to all of their claims for deliberative process privilege, with the exception of the seven documents identified above: OASD-HAGC 272 and 563–68, and OASD-HA Policy 28–35, 659, 758–59, 761–62, and 765–66.[5] Where an agency fails to meets its burden, FOIA provides courts

---

[5] At the time the parties completed their briefing, the Navy asserted that Navy 31, 32, and 40 were exempt under FOIA Exemption 5, as well as other exemptions. *See* Navy *Vaughn* Index, ECF No. 61-7 at 4–5. Since then, however, the Navy has released those documents in part, making only minimal redactions under Exemption 6 to protect the identities of individuals. As this invocation of Exemption 6 is undoubtedly proper, the Court grants summary judgment in favor of the Navy with respect to those three documents. *See, e.g.*, *Judicial Watch v. Dep't of the Navy*, 25 F. Supp. 3d at 141 ("Courts have held specifically that Exemption 6 covers 'such items as a person's name . . . .'" (quoting *Lewis v. Dep't of Justice*, 867 F. Supp. 2d 1, 17 (D.D.C. 2011))).

"a host of procedures" to determine whether the exemption claim is proper, including discovery, further agency affidavits, and *in camera* review of the records in question. *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980), *abrogated on other grounds by Founding Church of Scientology of Wash., D.C., Inc. v. Smith*, 721 F.2d 828, 830–31 (D.C. Cir. 1983). A combination of the latter two are appropriate here, given that the documents are relatively short in length. *Id.* The Court exercises its "broad discretion" to order submission of the above-listed documents within thirty days for *in camera* review, along with updated justifications for the claims of deliberative process privilege. *Id.* at 1297. Those updated justifications may come in the form of new agency affidavits or revised *Vaughn* indexes. *See Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). Plaintiffs may then file a response to these updated submissions within twenty-one days.

## 2. Segregability

Before moving onto Defendants' other claimed exemptions, there is one other deficiency with one of the Defendants' submissions with respect to the deliberative process privilege—that Defendant being OASD-HA Policy. As Plaintiffs correctly note, "the deliberative process privilege does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Loving*, 550 F.3d at 38; *see also* Pls.' Opp'n to Defs.' Cross-Mot. for Summ. J. ("Pls.' Opp'n") at 9, ECF No. 62; 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."). To meet its burden on segregability, a government agency must usually submit a sufficiently detailed *Vaughn* index for each document and an affidavit or declaration stating that it has released all segregable material. *See Johnson v. Exec. Office of U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("The

combination of the *Vaughn* index and the affidavits . . . are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated."); *Loving*, 550 F.3d at 41.

As the Court just explained, Defendants here have done the former: with the exception of the seven documents specifically identified as having insufficient explanations, the entries in their *Vaughn* indexes are adequate. The Navy and OASD-HAGC have also met the latter requirement: they submitted declarations stating that they have released all segregable information. *See* Schrock Decl. ¶¶ 5–6; Decl. of John A. Casciotti ¶ 3, ECF No. 61-5. OASD-HA Policy has not, however, submitted such a declaration. The agency instead asks the Court to infer that it has met its obligation based on the fact that it has released a large portion of its privileged documents in part. But the Court declines this invitation; courts typically require sworn declarations or affidavits to avoid such conjecture. Thus, although OASD-HA Policy, like the other two Defendants, has shown a willingness to segregate information, it has failed to establish that no *additional* reasonably segregable information exists within the material it has withheld. *See Loving*, 550 F.3d at 41. It therefore must re-review its withholdings, produce to Plaintiffs any remaining non-privileged, segregable material that has not yet been released, and submit an affidavit or declaration confirming that all segregable material has been released.

## B. Exemption 1

As the Court said earlier, aside from Plaintiffs' challenges to Defendants' claims of deliberative process privilege, there are three additional discrete issues raised in the parties' motions for summary judgment. The first relates to FOIA Exemption 1, which protects material "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and" that is "in fact properly classified pursuant to

such [an] Executive order." 5 U.S.C. § 552(b)(1). Plaintiffs dispute the Navy's assertion of Exemption 1 to withhold in part one document: Navy 42, an interrogation log from the Guantanamo Bay detention facility. The Navy argues that it is authorized to partially withhold this document based on Executive Order 13526, which permits the classification of information that, if disclosed, "reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism," in a manner that "the original classification authority is able to identify or describe." 75 Fed. Reg. 707, 707 (Dec. 29, 2009); *see also* Schrock Decl. ¶ 17(s). According to the Navy, parts of Navy 42 are classified "Secret" pursuant to Executive Order 13526, because they reveal "intelligence sources [and] methods" within the meaning of the Order. 75 Fed. Reg. at 709; *see also* Schrock Decl. ¶ 17(s).

In evaluating the Navy's Exemption 1 claim, the Court is guided by the same general principles identified above: the agency's justification for invoking the exemption "is sufficient if it appears logical or plausible'" *Am. Civil Liberties Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (internal quotation marks omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). But the Court must also be wary of the limitations of judicial review in the national security context. Courts "lack the expertise necessary to second-guess . . . agency opinions in the typical national security FOIA case." *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (quoting *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980)). Courts therefore "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record," and they must remain cognizant of the fact "that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *Am. Civil Liberties Union*, 628 F.3d at 619 (quoting *Wolf*, 473 F.3d at 374). "If an agency's affidavit

describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within [Exemption 1], and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Id.*

Here, contrary to the Plaintiffs' contentions, the Navy's submission is sufficiently detailed to show that parts of Navy 42 logically fall within the scope of Exemption 1. As the Court already said, the Navy has asserted that the parts of the document are classified at the "Secret" level. In the Court's view, it certainly makes sense that a classified detainee interrogation log would contain information about intelligence sources and methods, and the agency's declaration explains that there are many reasons why revelation of those sources and methods could risk national security and the defense against transnational terrorism. For one, intelligence sources, the declaration states, "can . . . be expected to furnish information only when confident that they are protected from retribution by the absolute secrecy surrounding their relationship to the United States government." Schrock Decl. ¶ 17(s). The declaration also explains that "[d]etailed knowledge of the methods and practices of an intelligence agency must be protected from disclosure because such knowledge would be of material assistance to those who would seek to penetrate, detect, prevent, avoid, or damage the intelligence operations of the United States." *Id.* And the declaration says that "[d]isclosure of information the U.S. government obtains through intelligence sources or methods could reasonably be expected to enable persons and groups hostile to the United States to identify U.S. intelligence activities . . . and to design countermeasures to them." *Id.* This justification is logical and plausible, and it is not "contradicted by contrary evidence in the record or by evidence of the agency's bad faith,"

*Am. Civil Liberties Union*, 628 F.3d at 619.  The Court thus grants summary judgment in the

Navy's favor with respect to its partial withholding of Navy 42.[6]

## C.  Exemption 7(E)

Plaintiffs also challenge the Navy's assertion of FOIA Exemption 7(E) over two

documents: Navy 35 and Navy 38, both of which contain a six-page memorandum titled "An

Alternative Approach to the Interrogation of Detainees at Guantanamo Bay, Cuba" that was sent

by the Director of the Naval Criminal Investigative Service ("NCIS") to the Navy General

Counsel.  *See* Schrock Decl. ¶¶ 17(l), (o).  Navy 38 also includes an eleven-page appendix titled

"Specific Recommendations for Interrogators of Al-Qa'ida Detainees at Guantanamo Bay,

Cuba" that "discuss[es] in detail proposed interrogation strategies and techniques."  *Id.* ¶ 17(o).

Exemption 7(E) permits the withholding of "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records

or information . . . would disclose techniques and procedures for law enforcement investigations

or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions

if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C.

§ 552(b)(7)(E).  The Exemption imposes, then, at least two basic requirements on government

agencies.  First, to establish that the documents at issue were "compiled for law enforcement

purposes," the agency must "establish a rational nexus between the investigation and one of the

---

[6] The Navy has also cited FOIA Exemptions 3 and 6 to redact the names of non-senior military interrogators and other individuals contained within Navy 42.  Schrock Decl. ¶ 17(s). To the extent that Plaintiffs challenge those redactions, the redactions are proper.  *See Hall v. CIA*, 881 F. Supp. 2d 38, 66 (D.D.C. 2012) (concluding that 10 U.S.C. § 130b permits agencies to withhold under FOIA Exemption 3 information concerning "any member of the armed forces assigned to . . . a routinely deployable unit."); *Judicial Watch v. Dep't of the Navy*, 25 F. Supp. 3d at 141 ("Courts have held specifically that Exemption 6 covers 'such items as a person's name . . . .'" (quoting *Lewis v. Dep't of Justice*, 867 F. Supp. 2d 1, 17 (D.D.C. 2011))).

agency's law enforcement duties," as well as "a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Second, the agency must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

Neither of these requirements are particularly demanding, but the Navy has not met them here. As justification for claiming Exemption 7(E), the Navy's declaration merely says that the withheld material "identif[ies] Law Enforcement and/or National Security techniques and procedures that are not widely known" and that are sometimes "intended for covert use." Schrock Decl. ¶ 17(o). Disclosure of this information, the Navy contends, "would diminish or negate the effectiveness of these techniques and procedures." *Id.* ¶ 17(o). This reasoning is conclusory; it essentially just restates the applicable legal standard in different words. With respect to the Exemption's first requirement, the Navy's declaration names no relevant "law enforcement duty" and no "individual or incident" at issue. And with respect to the second requirement, the declaration identifies no "law" that would be easier to violate if the information were released. To be sure, Plaintiffs do not appear to have challenged certain aspects of the Navy's assertions here, and the Court can easily assume that NCIS qualifies as a law enforcement agency. The Court can also imagine an argument that the disclosure of the specifics of interrogation methods might make it easier for detainees to resist interrogation. But the Court cannot be required to make such assumptions; the burden is on the Navy to establish the requisite nexus. As things currently stand, then, the Court is unable to conclude that the withheld material was "compiled for law enforcement purposes" or that its release "could reasonably be expected

to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The Court therefore orders that the Navy submit these documents for *in camera* review within thirty days and provide an updated, more specific justification that explains why Exemption 7(E) is applicable. Plaintiffs may then respond within twenty-one days.

### D. Exemption 6

Finally, Plaintiffs challenge the OASD Defendants' invocation of FOIA Exemption 6 to redact the domain portions of agency email addresses—like "@defense.gov." (The Navy has not redacted this information.) Exemption 6 permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The analysis for this Exemption "requires, first, a determination of whether the document in question qualifies as 'a personnel, medical, or similar file[].'" *Judicial Watch v. Navy*, 25 F. Supp. 3d at 140 (alteration in original) (quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008)). For purposes of this determination, the term "similar files" is "construed broadly and is 'intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010) (quoting *Dep't of State v. Wash. Post. Co.*, 456 U.S. 595, 602 (1982)). If the document at issue does qualify as a personnel, medical, or similar file, the Court must then "determine whether there is a 'substantial' privacy interest in preventing the document's disclosure." *Judicial Watch v. Navy*, 25 F. Supp. 3d at 140 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). And if such a privacy interest does exist, the Court must "engage in a balancing test that weighs 'the privacy interest that would be compromised by

disclosure against any public interest in the requested information.'" *Id.* (quoting *Multi Ag Media*, 515 F.3d at 1228).

In this case, Defendants have not even shown how the domain part of a government email address constitutes a "personnel, medical, or similar file" within the meaning of Exemption 6. As Plaintiffs correctly note, email domains do not "refer to a particular individual." *Id.* at 141; *see also* Pls.' Opp'n at 16. Perhaps, in some instances, an email domain could be so unique that it risked revealing the identify of the address holder, but Defendants have not even attempted to make such a showing here. Instead, they merely assert that "Plaintiffs do not cite any law in support of their argument that the domain part of email addresses should be released." Defs.' Reply at 24. This, of course, has it backwards: in FOIA cases, the burden is always on the agency to justify the withholding of requested information. *See, e.g.*, *People for the Ethical Treatment of Animals v. Dep't of Health and Human Servs.*, 901 F.3d 343, 350 (D.C. Cir. 2018).

And even if Defendants had established that email domains were "similar files" for purposes of Exemption 6, they have not shown a "'substantial' privacy interest" that weighs in favor of withholding. *Judicial Watch v. Navy*, 25 F. Supp. 3d at 140 (quoting *Nat'l Ass'n of Retired Fed. Employees*, 879 F.2d at 874. Plaintiffs, meanwhile, have provided a reason why the public has an interest in seeing the domains: the domains normally indicate what government agency employs the individual email address holder, and the "public has a right to know which agencies and departments are involved in making different types of decisions." Pls.' Opp'n at 16–17. Thus, had Defendants shown that the email domains were encompassed within Exemption 6, it is doubtful that the Exemption's required balancing test would have weighed in favor of withholding.

Nonetheless, the Court will treat this issue essentially the same way it has treated the others where Defendants have failed to meet their burden. If Defendants still believe that certain email domains are exempt under Exemption 6, they may submit, within thirty days, an updated justification that explains (1) how the relevant domains are "similar files" that refer to a particular individual; (2) how disclosure of the domains would implicate any substantial privacy interest; and (3) how that substantial privacy interest outweighs the public's interest in seeing the information. Should Defendants choose to exercise this option, Plaintiffs may file a response within twenty-one days.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is **DENIED**, and Defendants' cross-motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 29, 2019                           RUDOLPH CONTRERAS
                                                 United States District Judge