**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| M. GREGG BLOCHE and | : | | |
| JONATHAN H. MARKS, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-2050 (RC) |
| | : | | |
| v. | : | Re Document No.: | 121 |
| | : | | |
| DEPARTMENT OF DEFENSE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR PARTIAL
SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This suit arising under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, began

in 2007, when Plaintiffs M. Gregg Bloche and Jonathan H. Marks sought records from multiple

federal government entities concerning the involvement of medical professionals in designing

and implementing interrogation tactics.  Presently before the Court is a renewed motion for

partial summary judgment brought by three Defendant agencies: (1) the United States Army

("Army"); (2) the Defense Intelligence Agency ("DIA"); and (3) the Joint Task Force

Guantanamo ("JTF-GTMO").[1]  *See* Defs.' Renewed Mot. Summ. J. ("Defs.' Mot."), ECF No.

121; Defs.' Mem. in Support Renewed Mot. Summ. J. ("Defs.' Mem."), ECF No. 121-1.  On

October 29, 2019, the Court granted in part and denied in part Defendants' motion for partial

summary judgment and directed Defendants to provide updated justifications for their claimed

---

[1] JTF-GTMO is a component of the Department of Defense and not formally a Defendant
in this suit.  The Court will nonetheless refer to it as a Defendant to address the records at issue
with greater particularity.

exemptions for a number of documents that remained in dispute. *See Bloche v. Dep't of Def.*

(*Bloche III*), 414 F. Supp. 3d 6 (D.D.C. 2019).[2] For the reasons detailed below, the Defendant

agencies have now provided adequate justification for their claimed exemptions for all but one of

the documents at issue.[3] Therefore, the Court grants the motion for partial summary judgment

for all documents related to Army, DIA, and JTF-GTMO except with respect to Army 79, for

which the motion is denied.[4]

## II.  LEGAL STANDARD

FOIA requires agencies to disclose records located in response to a valid FOIA request,

unless material in the records falls within one of FOIA's nine statutory exemptions. 5 U.S.C. §

552(b); *see also Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017);

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). "FOIA cases typically and

---

[2] The Court refers to the October 2019 opinion as *Bloche III* to distinguish it from the two previous opinions in the same suit. *See Bloche v. Dep't of Def.* (*Bloche II*), 370 F. Supp. 3d 40 (D.D.C. 2019); *Bloche v. Dep't of Def.* (*Bloche I*), 279 F. Supp. 3d 68 (D.D.C. 2017).

[3] The Court's October 2019 decision called on two other agencies to provide updated justifications for their claimed exemptions: the Office of the Assistant Secretary of Defense for Health Affairs ("OASD-HA Policy") and the United States Special Operation Command ("SOCOM"), which, like DIA, is actually a component of the Department of Defense and not formally a Defendant. Upon re-reviewing the two documents remaining at issue, the Department of Defense decided to discretionarily release both records, resolving the last outstanding issues for OASD-HA Policy and SOCOM. *See* Defs.' Mem. at 2 n.2.

[4] Plaintiffs did not file a response to Defendants' motion presently before the Court. In a reply memorandum, Defs.' Reply, ECF No. 123, Defendants note Plaintiffs' failure to respond or seek an extension of time in which to do so and state that "[a]ccordingly, there is no genuine dispute of material fact as to the agencies' opening memorandum, therefore, Defendants Army, DIA, and DoD, are entitled to partial summary judgment." *Id.* at 1 (citing *Dutton v. U.S. Dep't of Justice*, 302 F. Supp. 3d 109, 126 n.6 (D.D.C. 2018)). While Defendants are correct that Plaintiffs' failure to respond suggests there is no genuine dispute of fact, Defendants still carry the burden to demonstrate the applicability of the claimed exemptions. *See Dutton*, 302 F. Supp. 3d at 126 n.6; *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("[A] motion for summary judgment cannot be 'conceded' for want of opposition."). The Court thus addresses in full the updated justifications for the claimed exemptions submitted by Defendants.

appropriately are decided on motions for summary judgment." *Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).   Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In a FOIA suit, summary judgment is appropriate "if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People, Inc. v. Office of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

The reviewing court may grant summary judgment based on the record and agency declarations if "the agency's supporting declarations and exhibits describe the requested documents and 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Pronin v. Fed. Bureau of Prisons*, No. 17-cv-1807, 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal citation omitted)).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Scudder v. Cent. Intelligence Agency*, 254 F. Supp. 3d 135, 140 (D.D.C. 2017) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal citations omitted)).  But exemptions are to be "narrowly construed." *Bloche II*, 370 F. Supp. 3d at 50 (quoting *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1115

(D.C. Cir. 2007)).  An agency must do more than provide "summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C 2013) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987)).

### III.  ANALYSIS

Plaintiffs do not challenge the present motion.  Nevertheless, the Court will review the updated justifications provided by Defendants as it is the agency's burden to establish the applicability of a FOIA exemption.  *See Winston & Strawn*, 843 F.3d at 505.  The sole issues in the renewed motion for partial summary judgment relate to Defendants' application of four FOIA exemptions: Exemption 1, Exemption 3, Exemption 5, and Exemption 7.  In ruling on Defendants' previous motion for partial summary judgment, the Court directed Defendants to provide updated justifications and clarifications with respect to many documents still in dispute. Primarily, the Court asked Defendants to give greater detail and context for the claimed exemptions and to clarify the particular privileges claimed for each portion of remaining challenged documents.  The Court's previous order resolved pending matters for the three Defendants currently before the Court except with respect to sixty-nine documents for Army,[5]

---

[5] The Court denied summary judgment because the explanation of the claimed exemption was inadequate with respect to these forty-seven documents: Army 21, Army 24, Army 25, Army 26, Army 34, Army 40, Army 41, Army 42, Army 43, Army 44, Army 45, Army 47, Army 48, Army 49, Army 50, Army 51, Army 52, Army 55, Army 56, Army 63, Army 64, Army 65, Army 66, Army 69, Army 70, Army 73, Army 74, Army 75, Army 76, Army 77, Army 78, Army 79, Army 86, Army 88, Army 89, Army 90, Army 91, Army 92, Army 93, Army 94, Army 98, Army 99, Army 107, Army 109, Army 111, Army 112, Army 113.  *Bloche III*, 414 F. Supp. 3d at 61 n.39.  The Court denied summary judgment with respect to the other twenty-two documents because Army failed to establish that it had released all reasonably segregable, non-exempt material.  *Id.*

one document for DIA,[6] and four documents for JTF-GTMO.[7]  *Bloche III*, 414 F. Supp. 3d at 61.
The Court deferred ruling on segregability for these remaining documents.  Because Defendants
have provided updated, and sufficient, justifications for the claimed exemptions on these
remaining documents, except for Army 79, and for the reasons set forth below, the Court will
grant Defendants' motion for partial summary judgment for all documents except for Army 79,
for which the motion is denied.

## A. Army

The remaining documents at issue for Army are most easily analyzed in three groupings:
the six documents submitted for *in camera* review, Army 111, and the forty documents that
previously had overlapping privilege claims.  Only Exemption 5 is at issue for Army and the two
relevant privileges are the deliberative process and attorney-client privileges.  The Court also
must decide whether Army has fulfilled its obligation to disclose all reasonably segregable non-
exempt material with respect to all sixty-nine documents still in play.  In support of its renewed
motion, Army submitted the Declaration of Major Nicole M. Kim, which includes an attached
updated *Vaughn* Index.  Defs.' Mem. Ex. A ("Kim Decl."), ECF No. 121-2; Defs.' Mem. Ex. A1
("Updated *Vaughn* Index"), ECF No. 121-2.

### 1.  Exemption 5

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters that
would not be available by law to a party other than an agency in litigation with the agency."  5
U.S.C. § 552(b)(5).  The Supreme Court and the D.C. Circuit have construed Exemption 5 to

---

[6] The document remaining for DIA is DIA 9-12.

[7] The documents remaining for JTF-GTMO are: JTF-GTMO 4-16, JTF-GTMO 52-66,
JTF-GTMO 78-90, and JTF-GTMO 94-95.

exempt documents "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 149; *see also Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  Exemption 5 thus "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant"—including, as relevant here, both "the deliberative process privilege," *Brown v. Dep't of State*, 317 F. Supp. 3d 370, 375 (D.D.C. 2018) (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation mark and citation omitted)), and the attorney-client privilege, *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Loving*, 550 F.3d at 38 (quoting *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  For the deliberative process privilege to apply, the record in question must "bear on the formulation or exercise of agency policy-oriented *judgment*."  *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (emphasis in original).  To qualify, the record must be both predecisional and deliberative.  *See Prop. of the People, Inc.*, 330 F. Supp. 3d at 382.  To be predecisional, a record must be antecedent to the adoption of an agency policy.  *See Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991).  Although "the term 'deliberative' does not add a great deal of substance to the term 'pre-decisional,'" it essentially means "that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive v. Cent. Intelligence Agency*, 752 F.3d 460, 463 (D.C. Cir. 2014) (citations omitted)

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc.*, 566 F.2d at 252.  The privilege "protects communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'"  *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).  If the communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980), then a court may infer confidentiality.  That said, a court should narrowly construe the attorney-client privilege, which "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."  *Id.* at 862 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

For both privileges, the agency bears the burden of showing that it properly applies.  *See Dillon v. U.S. Dep't of Justice*, No. 17-cv-1716, 2019 WL 249580, at *8 (D.D.C. Jan 17, 2019) (citing *Prop. of the People, Inc.*, 330 F. Supp. 3d at 380).  In order to meet its burden, the agency must offer a "relatively detailed justification" of its application of the privilege.  *Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent.*, 566 F.2d at 251).  "An agency may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools."  *Elec. Frontier Found. v. U.S. Dep't of Justice*, 57 F. Supp. 3d 54, 59 (D.D.C. 2014) (quoting *Comptel v. Fed. Commc'n Comm'n*, 910 F. Supp. 2d 100, 111 (D.D.C. 2012)).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Dillon*, 2019 WL 249580, at *8

(quoting *Wolf v. Cent. Intelligence Agency*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (internal

quotation marks and citation omitted)).

### 2.  Documents Submitted for *In Camera* Review

In October 2019, the Court directed Army to submit six documents for *in camera* review

in addition to updating their justifications for the deliberative process privilege claims: Army 25,

Army 26, Army 63, Army 64, Army 112, and Army 113.  *Bloche III*, 414 F. Supp. 3d at 42.  On

January 31, 2020, Army delivered these documents for inspection contemporaneously with the

filing of Defendants' renewed motion for partial summary judgment.  *See* Notice of Delivery for

*In Camera* Inspection, ECF No. 120.  The Court turns first to this batch of six.

The Court previously found that Army failed to justify its withholding of Army 25, Army

26, Army 112, and Army 113 because the agency could not locate the unredacted versions of

these documents and consequently relied on its 2008 determination that Exemption 5 applied to

all four documents in full.  *Bloche III*, 414 F. Supp. 3d at 41–42.  The Court explained that

relying on the 2008 determination could not justify withholding the documents in full because

Army had not "provided any justification for withholding the unredacted portions" of the

documents.  *Id.* at 41.  The Court thus stated that the deliberative process privilege could be

claimed only when Army described in "reasonably specific" detail how all withheld portions

related to the privilege.  *Bloche III*, 414 F. Supp. 3d at 41–42.  After finding the unredacted

versions, *see* Kim Decl. ¶ 5, Army has now updated its justifications for these documents.

Army continues to claim the deliberative process privilege to withhold Army 25 and

Army 26 in full.  As before, Army describes both documents as a draft appendix to the draft

Army Field Manual 2-22.3 ("FM 2-22.3") that "addresses restricted interrogation approach

techniques."  *See* Updated *Vaughn* Index at 4; *see also Bloche III*, 414 F. Supp. 3d at 41 ("Army

does describe the nature of the documents with reasonable specificity").  Army now further justifies withholding by explaining the documents are drafts that "pre-date[] the issuance of the final policy document."  Updated *Vaughn* Index at 4.  Upon evaluating the justification that applies to the entire document and reviewing the documents *in camera*, the Court finds that Army has met its burden of establishing that Exemption 5 applies to Army 25 and Army 26.  *See Coastal States*, 617 F.2d at 866 ("The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.").

Likewise, with respect to Army 112 and Army 113, the agency has updated its claims for exemption based on its review of the unredacted versions.  Kim Decl. ¶ 5.  Army maintains both documents are fully exempt under the attorney-client and deliberative process privileges.  *See* Updated *Vaughn* Index 51–52.  The Court finds that Army has explained in sufficient detail the basis for its claims of Army 112 and Army 113 given that both documents were prepared for legal purposes and kept confidential, *see Tax Analysts*, 117 F.3d at 618, and that both represent draft memoranda about specific policies and "reflect the give-and-take of the consultative process."  Updated *Vaughn* Index at 51–52; *Coastal States*, 617 F.2d at 866.  The Court's review of Army 112 and Army 113 confirms this finding.

With respect to Army 63 and Army 64, the Court previously found that Army failed to justify the deliberative process privilege claims because Army did not "contextualize the agency's development of and subsequent reliance on—or lack thereof—the reasoning in these documents."  *Bloche III*, 414 F. Supp. 3d at 40.  After re-reviewing these documents, "Army has determined they were created for the purpose of assisting with the development of a media and public affairs plan for responding to media and other inquiries about the [FM 2-22.3]."  Kim

Decl. ¶ 9.  The new characterization of these documents as relating to a developing media strategy sufficiently establishes that the deliberative process privilege applies.  *See Bloche III*, 414 F. Supp. 3d at 40 (citing *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 118 (D.D.C. 2014)); *see also Competitive Enter. Inst.*, 232 F. Supp. 3d at 187–88 (documents generated as part of a media strategy are protected under the deliberative process privilege).  As with the other documents submitted for *in camera* review, the Court's assessment of these documents aligns with the updated justification and supports application of the privilege.

### 3.  Army 111

During the last round of summary judgment motions, Army applied the work product privilege to Army 111.  Army described the document as a "draft memorandum" that "provides legal analysis, opinions, and recommendations regarding the adoption of certain detainee interrogation techniques being considered by the Department of Defense," which the author, the Judge Advocate General, "anticipates will potentially be subject to litigation in both international and domestic forums."  Second Swords Decl. ¶ 9a, ECF No. 100-2.  The Court found that "this speculative future prospect of possible litigation, without more, does not suffice to establish" the work product privilege.  *Bloche III*, 414 F. Supp. 3d at 46.

In its updated justification, Army withholds Army 111 solely based on the attorney-client privilege.  Kim Decl. ¶ 14.  Army now describes Army 111 as "a draft memorandum prepared by Army's [Judge Advocate General ("TJAG")] at the request of the Army's Office of General Counsel [that] consists of TJAG's preliminary analysis, opinions, and recommendations regarding legal, policy, and operational issues related to the interrogation of detainees."  *Id.* Army's supporting declaration further states that the memorandum and request for legal analysis "were made in confidence" and that "no record indicating that the confidentiality of those

communications has been compromised" was found. *Id.* Because the communication was confidential and made "between an attorney and his client relating to a legal matter for which the client has sought professional advice," *Mead Data Cent., Inc.*, 566 F.2d at 252, Army has adequately justified application of the attorney-client privilege for Army 111.

4.   Documents with Overlapping Privilege Claims

The Court previously found that Army insufficiently explained the basis of its privilege claims with respect to forty documents where Army claimed both the deliberative process and the attorney-client privileges. *Bloche III*, 414 F. Supp. 3d at 46. Finding it difficult to discern which privilege applied to which withholdings, the Court explained the real consequences of this uncertainty: "The two privileges often overlap, yet they are not identical: attorney-client privilege covers the underlying factual material associated with an attorney's provision of legal advice, whereas the" deliberative process privilege does not permit withholding of the underlying facts unless disclosure would indirectly reveal the protected portions of the document. *Bloche III*, 414 F. Supp. 3d at 49 (citing *Mead Data Cent., Inc.*, 566 F.2d at 254). The Court thus directed "Army to submit supplemental material to clarify which privilege it is claiming for each portion of these forty challenged documents." *Id.*

For some documents in this category, Army clarifies in its updated *Vaughn* index that the privileges completely overlap. For example, Army 34's entry now includes a paragraph explaining the deliberative process privilege claim and a separate paragraph explaining the attorney-client privilege claim,[8] but confirms the document is fully exempt under both privileges. *See* Updated *Vaughn* Index at 5. For other documents, such as Army 50, the updated

---

[8] Army follows this model for each of its updated justifications in this grouping except for its justification for Army 79, which was not updated.

justification clarifies that certain portions of the document are withheld solely on the basis of the

deliberative process privilege. *See* Updated *Vaughn* Index at 15 (explaining that a predecisional

draft policy attachment is withheld solely through the deliberative process privilege). For some

documents, Army withdrew its claim of the attorney-client privilege altogether, relying entirely

on the deliberative process privilege. *See* Updated *Vaughn* Index at 8–9 (withdrawing claim of

attorney-client privilege from Army 40, Army 41, and Army 42). The added detail and

clarifications with respect to documents in this grouping, except for Army 79, satisfy the Court

that the privileges are properly claimed for the respective portions described.

The justification for withholding Army 79 was not updated. *See* Updated *Vaughn* Index

at 33; Second Swords Decl. Ex. 1 at 29, ECF No. 100-2. The justification for Army 79 still

conflates the deliberative process and attorney client privileges, borrowing language from both

applicable standards, leaving it unclear which privilege applies to which portions of the record.

*See* Updated *Vaughn* Index at 33. Because the Court could not grant summary judgment based

on this justification previously, the Court sees no reason that it should grant summary judgment

based on the same justification now. Thus, the Court finds that Army adequately claims

Exemption 5 withholding with respect to all sixty-nine remaining Army documents, except for

Army 79. The Court directs Army to submit an updated justification for Army 79 at which point

it will determine whether the claim of either one or both of the privileges is adequate.

### 5. Segregability

The Court has a duty to consider whether the agency has met its obligation to produce all

segregable, nonexempt information. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir.

2010) (referring to court's "affirmative duty to consider the segregability issue sua sponte"

(quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)). This obligation can be fulfilled

through a sworn declaration from an agency official.  *Milton v. U.S. Dep't of Justice*, 842 F.

Supp. 2d 257, 260 (D.D.C. 2012) ("An affidavit stating that an agency official conducted a

review of each document and how she determined that no document contains segregable

information fulfills the agency's obligation.").  In Army's new declaration, Major Nicole Kim

affirmed that she "conducted a line-by-line review of all [] records that were the subject of the

Army's first motion for partial summary judgment . . . [and] determined that the Army has

released all reasonably segregable non-exempt information in the remaining documents."  Kim

Decl. ¶ 17.  In the process of re-reviewing, Army released Army 48, Army 64, and Army 70 with

modified redactions.  *Id.*  Accordingly, the Court finds that Army has fulfilled its obligation with

respect to segregability for all remaining documents except for Army 79, for which the Court

withholds judgment until Army submits an updated justification.

## B.  DIA

One document remains at issue for DIA: DIA 9-12, "a four-page written summary of a

trip taken between September 24, 2002 and January 18, 2003 to assess DoD interrogation

operations at Guantanamo Bay."  Defs.' Mem. Ex. B ¶ 5 ("Morris Decl."), ECF No. 121-3.  DIA

invokes Exemptions 1, 3, and 5 to withhold information in this record.  *Id.*  The Court directed

DIA in its October 2019 order to "submit a supplementary affidavit or declaration that states

which portions of DIA 9-12 were withheld pursuant to which FOIA exemption" to aid its

assessment of the agency's justifications.  *Bloche III*, 414 F. Supp. 3d at 54.  Alongside the

renewed motion for partial summary judgment, DIA submitted the Declaration of Renee L.

Morris, which includes an as-produced version of DIA 9-12 as an attached exhibit.  *See* Morris

Decl. Ex. 1.  The Morris Declaration breaks DIA 9-12 into twenty-seven parts to explain which

portions of the record apply to Exemptions 1, 3, and 5.

1. Exemption 1

FOIA Exemption 1 protects material that is (1) "specifically authorized under criteria established by an Executive order to be kept secret in the interests of national defense or foreign policy" and (2) "in fact properly classified pursuant to such [an] Executive order."  5 U.S.C. § 552(b)(1); *see also Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009) (quoting 5 U.S.C. § 552(b)(1)).  The applicable classification order, Executive Order ("E.O.") No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), sets forth "both substantive and procedural criteria for classification."  *Judicial Watch, Inc.*, 715 F.3d at 941.  Substantively, "classified information must pertain to at least one of eight subject-matter classification categories" found in E.O. 13,526, § 1.4 and "disclosure of that information must reasonably be expected to cause some degree of harm to national security."  *Id.*  Procedurally, the information must be classified "by an individual with original or derivative classification authority" and "documents must be marked with several pieces of information, including the identity of the classifier and instructions for declassification."  *Id.*; *see also Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 296 F. Supp. 3d 109, 124 (D.D.C. 2017) (discussing E.O. 13,526).

When reviewing agency justifications for Exemption 1, courts in this Circuit have "consistently deferred to executive affidavits predicting harm to the national security[] and have found it unwise to undertake searching judicial review."  *Nat'l Sec. Counselors v. Cent. Intelligence Agency.*, 960 F. Supp. 2d 101, 164–65 (D.D.C. 2013) (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 927 (D.C. Cir. 2003)); *see also James Madison Project v. Cent. Intelligence Agency*, 605 F. Supp. 2d 99, 109 (D.D.C. 2009) (citing *Schlesinger v. Cent. Intelligence Agency*, 591 F. Supp. 60, 67 (D.D.C. 1984), then citing *Halperin v. Cent. Intelligence Agency*, 629 F.2d 144, 148 (D.C. Cir. 1980)).  Courts thus "accord substantial

weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Am. Civil Liberties Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (quoting *Wolf v. Cent. Intelligence Agency*, 473 F.3d at 374).

### 2.  DIA's Application of Exemption 1

The updated DIA declaration "confirm[s] that [DIA 9-12] contains information that an original classification authority, consistent with the requirements of E.O. 13,526, properly classified at the TOP SECRET, SECRET, and CONFIDENTIAL level." Morris Decl. ¶ 8.  It further affirms that "the information withheld pursuant to Exemption 1 . . . falls within Section 1.4(c) of E.O. 13,526." *Id.*  According to DIA, the redacted information "relates to intelligence activities, intelligence sources or methods, or cryptology," *id.* ¶ 9, in addition to "DOD interrogation tactics, techniques, and procedures (TTPs), challenges with those TTPs, recommendations for methods and practices to address those challenges, and a recommendation regarding the way ahead," *id.* ¶ 12.  DIA's declaration describes twenty-four items redacted from the record that it contends appropriately fall within Exemption 1, all of which relate to intelligence sources, methods, or analysis.  *Id.*  DIA further affirms that disclosure of the withheld portions "would yield information about the type of intelligence gathered from specific detainee sources . . . could identify for the adversary gaps in the U.S. Government's ability to gather information . . . [and] would provide adversaries sufficient information . . . to develop countermeasures" to impede intelligence gathering.  *Id.* ¶ 13.

The Court finds that the additional details and certification provided by DIA satisfy its burden to establish the applicability of Exemption 1.  *See Am. Civil Liberties Union*, 628 F.3d at 624 (describing the "light" burden to establish a risk of harm to national security).  The updated declaration fulfills the Court's directive to "state[] which portions of DIA 9-12 were withheld

pursuant" to Exemption 1, *Bloche III*, 414 F. Supp. 3d at 54, and supplies a detailed justification

for each of those portions.  The declaration confirms that the portions withheld pursuant to

Exemption 1 meet both the substantive and procedural criteria for classification under E.O.

13,526 and are therefore properly withheld.  *See Judicial Watch, Inc.*, 715 F.3d at 941.

### 3.  Exemption 3

FOIA Exemption 3 protects material "specifically exempted from disclosure by statute,"

provided that the statute "requires that the matters be withheld from the public in such a manner

as to leave no discretion on the issue," or "establishes particular criteria for withholding or refers

to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  When evaluating a claim of

Exemption 3, courts must determine whether the statute identified by the agency qualifies as an

exemption statute and, subsequently, whether the material falls within the scope of the statute.

*Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 167–68 (1985); *Fitzgibbon v. Cent. Intelligence

Agency*, 911 F.2d 755, 761 (D.C. Cir. 1990).  DIA invokes 10 U.S.C. § 424, which states that

"no provision of law shall be construed to require the disclosure of" the "organization or any

function of an organization of the Department of Defense named in subsection (b)" of the section

or "the number of persons employed by or assigned or detailed to any such organization or the

name, official title, occupational series, grade, or salary of any such person."  10 U.S.C. §

424(a)(1)–(2).  This exemption of disclosure applies to DIA, 10 U.S.C. § 424(b)(1), and the

statute qualifies as an exemption statute under FOIA.  *Khatchadourian v. Def. Intelligence

Agency*, No. 16-cv-311, 2020 WL 1309941, at *20 (D.D.C. Mar. 19, 2020); *Sack v. Cent.

Intelligence Agency*, 53 F. Supp. 3d 154, 174 n.17 (D.D.C. 2013).  As such, the Court must

determine whether the material withheld pursuant to Exemption 3 falls within the scope of 10

U.S.C. § 424.

Few courts have considered the exact meaning and scope of the "organization or any function of any organization" portion of 10 U.S.C. § 424.  In *Khatchadourian*, the court found the purpose of this provision "is to protect from disclosure how an intelligence agency such as DIA is structured . . . by protecting the policies by which DIA operates" but not the "underlying activities themselves."  2020 WL 1309941, at *20 (citing *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 776 (9th Cir. 2015)).  The Court finds this interpretation sensible and follows the same approach.

### 4.  DIA's Application of Exemption 3

DIA's declaration confirms that much of the information withheld under Exemption 3 pertains to protecting the identities of DIA personnel involved in specific intelligence operations. *See* Morris Decl. ¶ 15.  These items fall squarely within the scope of 10 U.S.C. § 424(a)(2), which protects against the disclosure of the identities of agency personnel, and, as such, are appropriately withheld.

DIA also identifies three items in DIA 9-12 that relate "to sensitive functions that fall within the meaning of" 10 U.S.C. § 424.  Morris Decl. ¶ 15.  The first of these items, Item #1, which also contains material withheld under Exemption 1, "consists of classification markings" that DIA uses "to protect from unauthorized disclosure sensitive functions."  Morris Decl. ¶ 15. The Court agrees that the markings could reveal DIA policy and thus qualify as a "function" protected by 10 U.S.C. § 424.  The markings demonstrate how DIA classifies materials and could show how classification is administratively accomplished.  Withholding such information thus "protect[s] the policies by which DIA operates."  *Khatchadourian*, 2020 WL 1309941, at *20.

The second item, Item #17, "relates to sensitive intelligence functions/operations that fall within the meaning of, and are protected from disclosure by, subsection [(a)(1)] of 10 U.S.C. § 424."[9]  Morris Decl. ¶ 15.  Unlike with Item #1, the description here offers no detail as to what functions, or types of functions, are at issue.  This type of conclusory invocation of the legal standard is not sufficient to justify withholding.  The third item, Item #22, similarly "relates to sensitive intelligence functions/operations that fall within the meaning of, and are protected by, subsection (c)(1) of 10 U.S.C. § 424."  *Id.*  While portions of Item #22's description do clearly fall within the scope of the exemption statute, *id.* (describing "a sensitive source that continues to provide valuable intelligence information"), the initial portion of the description is deficient. DIA does not explain what type of function or operation would be revealed and the Court has no basis for determining whether the withheld information appropriately falls within the protective scope of the statute.  Allowing an agency to withhold information based on such a bare recitation of the statutory language would inappropriately expand the scope of Exemption 3.  Accordingly, DIA has not shown Exemption 3 applies to the initial portions of Items #17 and #22 because it fails to describe with particularity what protected functions or operations would be revealed through disclosure.  However, because the Court finds DIA appropriately invokes Exemption 5 for these same Items, summary judgment in favor of the agency is still appropriate.

5.  DIA's Application of Exemption 5

As discussed above, Exemption 5 protects from disclosure material that falls within the deliberative process privilege.  *See Loving*, 550 F.3d at 38 (quoting *U.S. Dep't of the Interior v.*

---

[9] With respect to Item #17, DIA's declaration further explains that "[a]dditional information withheld relates to organizational structure and was withheld to protect the name of an office involved in specific intelligence operations, as well as the number of personnel assigned to that function/operation."  Morris Decl. ¶ 15.  This "additional information" falls squarely within the protection of the statute and is therefore properly exempted.

*Klamath Water Users Protective Ass'n*, 532 U.S. at 8).  DIA's updated declaration explains that in DIA 9-12 "the author was providing opinions, advice, and recommendations to the author's superiors on ways to improve DoD's interrogation TTPs at Guantanamo Bay."  Morris Decl. ¶ 16.  DIA asserts that all the substantive portions of the document fall under the deliberative process privilege because "it was created for the purpose of informing a decision on whether specific steps should be taken to address the challenges and issues the author outlined in the Trip Report."  *Id.*  Furthermore, according to DIA, the author's "opinions, assessments, advice, and recommendations" are "inextricably intertwined" with the information withheld under Exemptions 1 and 3.  *Id.*  DIA claims disclosure "would expose the U.S. Government's decision making process in such a way that would discourage future open and frank discussion among agency employees, thereby undermining the Government's ability to identify challenges . . . and to identify and consider means of eliminating or mitigating those challenges."  *Id.*  ¶ 17.

Although broad, the Court finds the updated justification sufficient to justify withholding under Exemption 5.  The author drafted the document for his or her superiors to provide opinions and assessments regarding observations made during a trip to Guantanamo Bay.  *See Access Reports*, 926 F.2d at 1195 ("A key feature under both the 'predecisional' and 'deliberative' criteria is the relation between the author and recipients of the document. A document from a junior to a senior is likely to reflect his or her own subjective opinions and will clearly have no binding effect on the recipient.").  DIA identified a specific policy this document addressed, mainly "DoD's interrogation TTPs at Guantanamo Bay."  Morris Decl. ¶ 16; *see also Bloche III*, 414 F. Supp. 3d at 28.  DIA affirms that the portions of the record withheld under Exemption 5 were "created for the specific purpose of informing a decision on whether specific steps need to be taken to address the challenges and issues outlined in the Trip Report."  Morris Decl. ¶ 17.

While DIA could certainly offer more detail, the description is "reasonably detailed" enough to show that the document "was part of a policy-oriented decisionmaking process," *Bloche II*, 370 F. Supp. at 53, regarding current challenges and proposed solutions for interrogation procedures at Guantanamo Bay. The updated justification, alongside the fact that Plaintiffs do not object, sufficiently establishes the applicability of Exemption 5.

### 6.  Segregability

DIA's declaration affirms that agency officials conducted a line-by-line review of DIA 9-12 to determine whether the document contains reasonably segregable non-exempt information. *See* Morris Decl. ¶ 18.  The declaration confirms that the agency "ha[s] determined that all reasonably segregable non-exempt information has been released to the Plaintiffs." *Id.*  As such, the Court finds that DIA has met its burden with respect to segregability. *Milton*, 842 F. Supp. 2d at 260.

## C.  JFT-GTMO

Four documents remain at issue for JTF- GTMO.  To provide further detail as to the agency's claimed exemptions, JTF-GTMO submitted a third declaration from Mark H. Herrington.  Defs.' Mem. Ex. C ("Third Herrington Decl."), ECF No. 121-4.

As an initial matter, the Court directed JTF-GTMO to submit clarification with respect to its withholding of JTF-GTMO 94-95. *Bloche III*, 414 F. Supp. 3d at 58.  Defendants' filings confirm that JTF-GTMO 94-95 is a duplicate of a document that contains information withheld pursuant to Exemptions 3 and 6 for which Plaintiffs withdrew their challenge in December 2018. *See* Defs.' Mem. at 24; Third Herrington Decl. ¶ 13.  The Court also sought clarification with respect to a document appended to a previous agency declaration with Bates numbered pages 0014–0015. *Bloche III*, 414 F. Supp. 3d at 58.  As it turns out, JTF-GTMO 94-95 is also

duplicative of this document.  Third Herrington Decl. ¶ 13.  Given that Plaintiffs withdrew their

challenge to a duplicate version of this document in 2018, and that Plaintiffs do not currently

challenge this material, the Court finds that the Exemptions claimed are appropriate.

Two other JFT-GTMO documents remain at issue: JTF-GTMO 4-16[10] and JTF-GTMO

52-66.  For both, JTF-GTMO invokes Exemption 7(E).[11]

### 1. Exemption 7(E)

FOIA Exemption 7(E) permits an agency to withhold records compiled for law

enforcement purposes when production of the records "would disclose techniques and

procedures for law enforcement investigations or prosecutions, or would disclose guidelines for

law enforcement investigations or prosecutions if such disclosure could reasonably be expected

to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  An agency seeking to apply

Exemption 7(E) must, accordingly, make two showings: (1) that the records were "compiled for

law enforcement purposes," *id.*, and (2) the agency must "demonstrate logically how the release

of the requested information might create a risk of circumvention of the law."[12]  *Mayer Brown*

---

[10] The Court previously denied summary judgment with respect to JTF-GTMO 78-90 as well.  *Bloche III*, 414 F. Supp. 3d at 61.  JTF-GTMO asserts that JTF-GTMO 78-90 is a duplicate of JTF-GTMO 4-16.  Defs.' Mem. at 24.  As such, the Court's analysis and ruling with respect to JFT-GTMO 4-16 applies to JTF-GTMO 78-90 as well.

[11] In its previous Order, the Court noted that Exemption 1 was also applied to portions of these documents but declined to address the applicability of Exemption 1 because "JTF-GTMO applied Exemption 7(E) to all portions of the document to which it also applied Exemption 1." *Bloche III*, 414 F. Supp. 3d at 60 n.37.  Because the Court now finds JTF-GTMO has provided sufficient justification for its claim of Exemption 7(E), it does not address the application of Exemption 1.

[12] JTF-GTMO argues that it is not clear whether the agency must show that disclosure could reasonably be expected to risk circumvention of the law with respect to records that reveal only "techniques and procedures" rather than "guidelines."  *See* Defs.' Mem. at 25–26 (citing *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* (*CREW*), 160 F. Supp. 3d 226, 241 (D.D.C. 2016)).  Whether or not the statutory language is clear, as noted in *CREW*, *see* 160 F. Supp. 3d at 242, this Circuit applies the "risk of circumvention of law" requirement to the "techniques and procedures" portion of the exemption, *see Public Employees for Environmental*

*LLP v. Internal Revenue Serv.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quoting *PHE, Inc. v. U.S. Dep't of Justice*, 943 F.2d 248, 251 (D.C. Cir. 1993). These requirements must be met in a nonconclusory fashion, yet there is a "relatively low bar for the agency to justify withholding." *Blackwell v.* Fed. Bureau of Investigation, 646 F.3d 37, 42 (D.C. Cir. 2011).

### 2. JTF-GTMO's Application of Exemption 7(E)

The Court previously found that JTF-GTMO failed to provide sufficiently specific details to justify its withholding claims in JTF-GTMO 4-16 and JTF-GTMO 52-56. While the documents clearly were compiled for law enforcement purposes, JTF-GTMO failed to describe how disclosing the withheld information could lead to a risk of circumvention of the law. *See Bloche III*, 414 F. Supp. 3d at 60. The Court directed JTF-GTMO to provide more than "conclusory language" that merely "restate[s] the applicable legal standard." *Id.* Although the previous justifications mentioned that the redacted information in these records dealt with "guard force" and "government strategies for ensuring the security of detention and interrogation operations," they did not explain in more detail "whether the information pertains to personnel, timing, reliability, or other matters entirely." *Id.* The lack of information meant the Court could "only speculatively connect the dots to determine *how* release of the redaction could create the 'chance of reasonably expected risk' of circumvention of the law." *Id.*

In its updated declaration, JFT-GTMO explains that the redacted portions of JFT-GTMO 4-16 include:

> the location and method of guard force observations []; specifics of location, timing and purpose of the guard force observations []; the use of specific environmental items to enhance intelligence gathering []; rules for transportation of detainees, particularly juveniles []; the purpose, parameters, and uses for the behavioral

---

*Responsibility v. U.S. Section, International Boundary and Water Com'n U.S.-Mexico*, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014) (citing *Blackwell v.* Fed. Bureau of Investigation, 646 F.3d 37, 41–42 (D.C. Cir. 2011)).

science consultation team assessments []; sources of information used in assessments []; and specific psychological, behavioral, and social factors that may influence the detainee's cooperation [].

Third Herrington Decl. ¶ 9. JFT-GTMO maintains that the information could "be used by current and future military detainees to evade the U.S. military's detention and interrogation security protocols and procedures." *Id.* ¶ 10. For JFT-GTMO 52-56, JTF-GTMO describes the redacted portions of the document as including: a photograph of the interrogation facility structure, lists of items provided to detainees as awards, lists of items withheld from detainees to obtain cooperation, limitations for conducting interrogations, and "the parameters of access to detainees by the International Committee of the Red Cross." *Id.* ¶ 11.

These new details provided by JTF-GTMO meet or exceed the justifications provided in other cases where Exemption 7(E) was upheld. *See Rosenberg v. U.S. Dep't of Defense*, 342 F. Supp. 3d 62, 94 (D.D.C. 2018) (allowing claim of Exemption 7(E) for information regarding process for enteral feeding of detainees). Rather than guess at how the withheld information might lead to a risk of circumvention of the law, as the Court was reticent to do before, *see Bloche III*, F. Supp. 3d at 60, the Court can now more readily appreciate how knowledge of such information could "decrease the effectiveness of the U.S. Military's interrogation protocols and practices" and "impede the U.S. military's ability to carry out its national security mission." Third Herrington Decl. ¶ 12. Disclosure "would raise significant security concerns" for guards, *Rosenberg*, 342 F. Supp. 3d at 94, as it would provide knowledge of guard location, detainee transportation, techniques to induce detainee cooperation, and the internal limits of interrogations. In the wrong hands, knowledge of such details could reduce the effectiveness of the procedures or, worse, put personnel in grave danger. As such, and given that Plaintiffs have

not opposed the claim, the Court finds that JTF-GTMO has appropriately withheld JTF-GTMO 4-12 and JTF-GTMO 52-56 under Exemption 7(E).

### 3.  Segregability

In its updated declaration, JTF-GTMO "confirm[s] that JTF-GTMO has released all reasonably segregable non-exempt information."  Third Herrington Decl. ¶ 14.  While the JTF-GTMO declaration does not speak to a line-by-line review, the detail provided throughout the declaration suggests a complete review of the four documents at issue.  The Court is thus satisfied that JTF-GTMO has released all reasonably segregable non-exempt information.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' renewed motion for partial summary judgment, ECF No. 121, is **GRANTED** with respect to Defendant Army, Defendant DIA, and Defendant JTF-GTMO for their applications of FOIA exemptions other than the application of exemptions in the following document, for which the motion is **DENIED**: Army 79.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 14, 2020                                             RUDOLPH CONTRERAS
                                                               United States District Judge